JOHN C. LAMB *vs.* HENRY TAYLOR, Sen'r.

*Seduction—Loss of Service—Evidence—Prayer—When objection to Evidence must be taken—Practice in the Court of Appeals.*

A father may maintain an action for the seduction of an adult daughter, provided she is living with him, and rendering him any service, however slight.

The rendition of such service is sufficiently established by proof that the daughter who lived with her parents, but during the day worked at a mill, and received her own wages, and out of them. clothed herself and paid her board to her mother, and sometimes assisted her mother in paying her rent,—would in the morning before going to work at the mill, and in the evening after her return, voluntarily assist her mother in her work about the house, and when her mother was taken sick she made up her bed for her.

In the common acceptation of the term, the place where the daughter boards and lodges is the place where she is said to live, although she may be working out by the day.

A prayer cannot properly be made to perform the office of an objection to illegal testimony.

When an objection is to the evidence, if it is known or apparent, it must be taken before and not after it has gone to the jury. If a party be unaware of the objection to the admissibility of such evidence at the time of its offer, he must raise his objection within a reasonable time thereafter. It is too late after the prayers have been granted by the Court, based upon the evidence, or the argument before the jury has commenced.

If the evidence is in the case it must be considered and allowed its full force. This Court has not the right to examine and see if it, or some of it, might not improperly have affected the verdict.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the plaintiff offered the following prayer:

1. That if the jury find from the evidence that Rachel Taylor is the daughter of the plaintiff, and that she has always lived with him and performed service for him as his servant in and about his household, and "slight service," is sufficient to sustain this action; and further find, that while she so lived with her father and performed service for him as aforesaid, she was seduced by the defendant and gave birth to a child begotten by him, and the plaintiff lost her service by reason of the confinement and lying-in of said Rachel, and was subjected to the payment of costs and charges on account thereof, then they ought to find for the plaintiff, notwithstanding they may believe that the said Rachel was, at the time of said seduction, over twenty-one years of age.

The defendant prayed the following instruction:

1. That the plaintiff has offered no evidence legally sufficient under the pleadings in this case, to entitle him te recover, and their verdict must therefore be for the defendant.

The Court, (STEWART, J.,) refused to grant this prayer, and thereupon the defendant filed the following special exception:

The defendant excepts specially to the plaintiff's first prayer, because the plaintiff has offered no evidence legally sufficient to prove that Rachel A. Taylor, his daughter, being over twenty-one years of age at the time of the seduction alleged in this case, was in the actual service of the plaintiff at the time of said alleged seduction.

The Court overruled the exception and granted the plaintiff's first prayer. To the action of the Court in refusing his first prayer, and overruling his special exception to the plaintiff's first prayer and in granting the plaintiff's first prayer, the defendant excepted.

Lamb *vs.* Taylor.

*Second Exception.*—The defendant offered the following prayer :

2. That if the jury find for the plaintiff in this case they are restricted in their estimation of damages to such loss of services as they find the plaintiff sustained by reason of the seduction of the plaintiff's daughter by the defendant.

· This prayer the Court refused, and at the request of the plaintiff instructed the jury as follows :

3. If the jury find the facts stated in the plaintiff's first prayer, it is competent for them to find such damage for the plaintiff as they may deem right and proper under all the evidence in the cause.

To the refusing of his second prayer, and to the granting of the plaintiff's third prayer the defendant excepted.

The jury gave a verdict for the plaintiff for $10,000, and judgment was entered thereon. The defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

· *Benjamin Kurtz*, for the appellant.

According to the plaintiff's own showing, the daughter was over twenty-one years of age at the time of the alleged seduction, and was also under a contract of employment with another from whom she received wages ; and though living under the same roof with her father, she was there in the capacity of a *boarder*, and not in any manner subject to her father's control or command. "When not employed at the mill she was her own mistress, and was at liberty to come and go as she pleased."

The alleged services were rendered to the *mother ;* and though it may be contended they enured to the benefit of the father, they were entirely voluntary and gratuitous on the part of the daughter, and the natural and usual

outcome of her filial relation. There was no *legal right* in the father, based upon support furnished the daughter, or any other consideration, which entitled him to command her services. ' On the contrary the daughter seemed to be supporting the father. She was not, therefore, his servant, *de facto*, and he cannot maintain this action. *Mercer vs. Walmsley*, 5 *Harr. & J.*, 27; *Keller vs. Donnelly*, 5 *Md.*, 216, 218; *Greenwood vs. Greenwood*, 28 *Md.*, 381; 2 *Greenleaf on Ev.*, Secs. 572, 573; 2 *Selw. N. P.*, 1103, 1104, (10*th Ed.;*) *Maunder vs. Venn*, 1 *Moody & Malk.*, 323; *Nickleson vs. Stryker*, 10 *Johns.*, 115; *Martin vs. Payne*, 9 *Johns.*, 387; *Bartley vs. Richtmyer*, 4 *Comstock*, 45; *Bigelow on Torts*, 291.

The case of *Mercer vs. Walmsley*, establishes beyond all question that mere voluntary services rendered by a daughter over 21 years, to her father, does not establish the relation of master and servant between them for the purposes of this action. And the mere fact that the seduced was the plaintiff's daughter, and was *living with him*, rendering voluntary service, does not signify. She must be living with him *as his servant*, though the service rendered may be inconsiderable.

Drop from the record in this appeal that Rachel A. Lamb was the plaintiff's daughter; and consider her only as a factory girl *boarding* in the house in which the plaintiff lived, and rendering his wife the voluntary services referred to, and who would then contend that this action could be maintained? *Mercer vs. Walmsley*, 5 *Harr. & J.*, 33, 34; *Postlethwaite vs. Parks*, 3 *Burr.*, 1878; *Satterwaite vs. Dewhurst*, 4 *Doug.*, 315; *McDaniel vs. Edwards*, 7 *Iredell*, 412; *Sutton vs. Huffman*, 2 *Vroom*, (*N. J.*,) 58, 62.

The Court below erred in granting the plaintiff's third prayer. It was misleading. It allowed the jury to take into consideration the probable expense of supporting the illegitimate child, and to award damages therefor to the

Lamb *vs.* Taylor.

plaintiff, which they are not entitled to do.   1 *Sedgwick on Damages*, 146 *note (a); 2 Sedgwick on Damages*, 516; *Hitchman vs. Whitney*, 9 *Hun*, (*N. Y.,*) 512; *Sargent vs.* ————, 5 *Cow.*, 106.

And also to award damages for the breach of promise of marriage, for which the daughter had her separate right of action.   This evidence, though admitted without objection, it was the duty of the Court, *ex mero motu*, to exclude from the consideration of the jury in awarding the plaintiff damages.   2 *Addison on Torts*, 1096, 1097; 2 *Sedgwick on Damages*, 516, *side page* 544; *Sauer vs. Schulenberg*, 33 *Md.*, 288; *Dodd vs. Norris*, 3 *Camp.*, 519; *Elliott vs. Nicklin*, 5 *Price*, 641; *Tullidge vs. Wade*, 3 *Wilson*, 18; *Gillett vs. Mead*, 7 *Johns.*, 193; *Foster vs. Scoffield*, 1 *Johns.*, 296; *Brownell vs. McEwen*, 5 *Denio*, 367; *Whitney vs. Elmer*, 60 *Barb.*, 250.

The broadest rule of damages yet suggested in actions of this kind, allows the jury to consider evidence outside of the loss of services and expenses for medical treatment, &c., only to compensate the plaintiff for the injury done to his feelings as parent, &c.   3 *Sutherland on Damages*, 739; *Phelin vs. Kenderline*, 20 *Pa. St.*, 361.

*Alexander H. Hobbs,* for the appellee.

STONE, J., delivered the opinion of the Court.

This was an action brought by the plaintiff, Taylor, against the defendant, Lamb, for the seduction of his daughter Rachel.   The declaration is in the usual form, alleging loss of service, &c.

The evidence shows that the daughter was over twenty-one years of age; that she was living and always had lived with her father and mother, but from the age of fourteen had been working during the day in the cotton mills at Woodberry, returning to the house of her father at night; that she received her own wages, and out of

them clothed herself and paid her board to her mother, and sometimes assisted her mother in paying her rent; that the family consisted of the plaintiff and his wife and two daughters; that his daughter gave birth to a child at home, and was kept there about two months, and the doctor who attended her in her confinement, had charged the bill to the plaintiff, which he had not paid. It was further proved by the daughter that she was seduced at home and that when not working in the mill her father had no control over her, and that whatever service she rendered was entirely voluntary. The evidence relating to the service is as follows: The plaintiff says:

"That the said Rachel after returning from the mill in the evening, would assist her mother in the work about the house, and when her mother was taken sick she made up her bed for her."

The daughter herself says; "In the morning before going to work at the mill, and in the evening after returning, she would assist her mother in her work about the house, and when her mother was taken sick she made up her bed for her." This is the evidence as to the services of the daughter.

It is well said by a learned author, (*Sutherland on Damages,*) that slight evidence is sufficient to establish the relation of master and servant, and that the allegation and proof on that point is *almost* an unmeaning formula—an obeisance to a shadow of the past—to reach the actual grievance. So in the case of *Mercer vs. Walmsley,* 5 *Harr. & J.,* 27, the Court said, "any slight service will be sufficient to raise the inference of fact that she was his servant."

So in *Keller vs. Donelly,* 5 *Md.,* 218, the Court said, "the slightest evidence will suffice to prove the relation of master and servant."

The evidence of the service rendered so as to establish the merely technical relation of master and servant, is

Lamb *vs.* Taylor.

certainly in this case sufficient. According to her testimony she daily did some of the ordinary woman's work about the house. There are many cases to be found where the action has been sustained where the evidence of the service was much less than we find in this record.

Nor does it matter that the daughter was over twenty-one years of age. If the daughter is living with her father rendering service, that connection is sufficient although she is over twenty-one years. *Mercer vs. Walmsley,* 5 *Harr. & J.,* 27.

It has been settled by this case, and many others both in England and this country, that a father may maintain an action for the seduction of an adult daughter provided she is living with him, and rendering him any service, however slight. This law we do not understand to be questioned ; but it is insisted that these services must not be voluntary, and that the fact that the daughter was in service elsewhere, will defeat the action.

But the services of an *adult* daughter to the father must be voluntary, as he has no legal right to require them after her majority. It is immaterial whether the services so rendered by the child are paid for or not, or, whether any special contract existed. *Lipe vs. Eisenlerd,* 33 *N. Y.,* 229; *Badyley vs. Decker,* 44 *Barbour,* 577.

The other question argued by the appellant, that because the daughter in this case was engaged in the cotton mills, and paid her board at home, the plaintiff could not recover, is not tenable upon authority.

It was said in *Mercer vs. Walmsley* above quoted, that where the daughter is over twenty-one years and *living* with her father, any slight act of service is sufficient to establish the relation of master and servant. In the common acceptation of the term, the place where the daughter boards and lodges, is the place where she is said to live. She may work out by the day, but where she eats and sleeps is her home, and there she lives ; more espe-

cially where that place is her father's house which has always furnished her with shelter. But ample authority is not wanting on that point.

The case of *Rist vs. Faup,* 4 *Best & S.,* was this: The daughter lived in her father's family, and was always at home from six o'clock in the evening until seven o'clock in the morning, and while there assisted in the house-work. That from seven o'clock in the morning to six in the evening she was in the service of the defendant as a laborer on his farm. Held by the Court *unanimously* that there was sufficient evidence to go to the jury.

The case of *Badgley vs. Decker,* 44 *Barbour,* 577, was this: The mother kept a boarding house, and the daughter who was over twenty-one years of age kept a milliner's shop in her own name, but lived with her mother and helped her to do the work about the house; and it was held that the mother could recover.

So in the case of *Villepique vs. Shular,* 3 *Strobhart,* 462, the daughter, over twenty-one, owned the house and furniture in which she and her mother lived, but she performed services for the mother. Held, that the mother was entitled to recover.

In this last case the Court said:

" That the daughter was owner of the establishment may serve to show her merit and her mother's destitution, but did not render the injury more tolerable to the mother."

So in the case before us, the fact that the daughter paid her board and sometimes aided in paying the rent, shows that she was *rendering a service* to the family more important and commendable than the mere formal averment of the loss of service required in the declaration.

From the cases above cited, we are of opinion that the Court below committed no error in the ruling on the first bill of exceptions.

The second exception contains a prayer of the defendant, which was refused, and a prayer of the plaintiff,

Lamb vs. Taylor.

which was granted.   We do not understand the appellant
to make any serious contest about his second prayer which
the Court properly refused, but he insists that the prayer
of the plaintiff contained in that exception, should not
have been granted.   This prayer of the plaintiff so
granted, instructed the jury that it was competent for
them to find such damage for the plaintiff as they might
deem right and proper *under all the evidence in the cause,*
provided they found the facts as stated in the plaintiff's
first prayer.

The reason assigned why this prayer should not have
been granted, is, that the jury might, under it, have
taken into consideration, the expense of supporting the
child, or damage for the breach of a promise to marry, as
something was said in the evidence about the defendant
having been required to give bond for the support of the
child, and a breach of promise to marry, was proved by
the plaintiff.

If, in a case of this sort, only legal testimony is before
the jury, the instruction is clearly correct.   But a prayer
cannot properly be made to perform the office of an ob-
jection to illegal testimony.   If any of the testimony,
offered by the plaintiff was not legal testimony in the cause,
it was the duty of the defendant to object to its admissi-
bility, at the time it was offered.   When the objection is
to the evidence, if it is known or apparent, it must be
taken before, and not after, it has gone to the jury.   If
unaware of the objection to the admissibility of such evi-
dence at the time of its offer, he must raise his objection
within a reasonable time thereafter.   It is too late after
the prayers have been granted by the Court, based upon
the evidence, or the argument before the jury has com-
menced.   *Dent vs. Hancock,* 5 *Gill,* 120 ; *Davis vs. Patton,*
19 *Md.,* 120.

No such objection having been made in the Court be-
low, this Court, even if it were to concede that any of the

evidence was inadmissible, (which we by no means do,) could not remedy the error.

· It was very ingeniously argued by the counsel for the appellant, that although the Court could not now decide the question of *admissibility,* the Court had the right to examine and see if it, or some of it, might not have *improperly* affected the verdict.

But this is not so. If the evidence *is in the case,* it must be considered and allowed its full force. *Gibbs vs. Gale,* 7 *Md.,* 76. ·

Perceiving no error in the ruling of the Court below, on the second exception, the judgment must be affirmed.

*Judgment affirmed.*

(Decided 16th March, 1887.)