506 A.2d 646

**Diane H. ZELLER**

v.

**GREATER BALTIMORE MEDICAL CENTER, et al.**

**No. 797, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

April 3, 1986.

**76**

Marvin Ellin (Thomas J. Kwiatkowski, Jr., LaVonna L. Vice and Ellin & Baker, on brief), Baltimore, for appellant.

Jeffrey B. Smith (Maureen J. Carr and Smith, Somerville and Case, on brief), Baltimore, for appellee Novoa.

Susan T. Preston (Donald L. DeVries, Jr., Laura C. McWeeney and Semmes, Bowen & Semmes, on brief), Baltimore, for appellee, Greater Baltimore Medical Center.

Argued before BLOOM, ROSALYN B. BELL and WENNER, JJ.

ROSALYN B. BELL, Judge.

Diane Zeller was kidnapped at gunpoint and raped. The assailant was later arrested, brought to trial and convicted.

Immediately after the incident, she was taken by the police to the Rape Crisis Center located at the Greater

Baltimore Medical Center (GBMC). Zeller was examined by Julio C. Novoa, M.D., who administered medication for the prevention of venereal disease. He also gave her a prescription for Estrace, a drug used to "prevent" pregnancy. Zeller had the prescription filled and stated that she took the Estrace as directed.

Sometime thereafter she discovered she was pregnant. Zeller later testified that her strong religious beliefs precluded her from having an abortion, and moreover she saw no reason why her child should pay for its criminal inception. She would not "feel right about killing the child." She further asserted she could not give up the biracial child for adoption because she feared that the child would be adversely affected knowing her mother had rejected her and her father was a criminal.

After the child was born, Zeller left her job to care for the child. She incurred and will continue to incur expenses in raising her daughter.

A complaint was filed by Zeller and her daughter under the Maryland Health Claims Arbitration Act, codified at Md.Cts. & Jud.Proc.Code Ann., §§ 3–2A–01 *et seq.* (1984 Repl.Vol., 1985 Cum.Supp.). The suit filed against Novoa and GBMC alleged both wrongful birth and wrongful life causes of action arising from violations of accepted and prevailing standards of gynecological care. Novoa was alleged to be practicing medicine at the time on behalf of GBMC, and GBMC was charged with vicarious liability for his negligence.

A three member Arbitration Panel found liability as to Novoa only and awarded damages in the amount of $250,-000 in favor of Zeller individually. The panel chairman sustained a demurrer without leave to amend the individual claim of wrongful life brought in the child's name. No finding was made as to GBMC's vicarious liability.

Both Novoa and Zeller filed Notices of Rejection of the panel's decision. Md.Cts. & Jud.Proc.Code Ann., § 3–2A–06(a), *supra.* Zeller rejected the award and appealed to the

Circuit Court for Baltimore County contesting the amount. An appeal was also brought on behalf of her daughter challenging the chairman's decision regarding her wrongful life cause of action. Novoa also appealed from the adverse finding of the Arbitration Panel.

The trial judge granted demurrers barring the child's claim for wrongful life.[1] GBMC filed a Motion Raising Preliminary Objection challenging the court's jurisdiction on the ground that Zeller's Notice of Rejection did not address the absence of a finding with respect to GBMC's liability. The judge denied that motion.

At the conclusion of the trial on the merits, GBMC moved for a directed verdict, premised on an insufficiency of evidence demonstrating an agency relationship between itself and Novoa. The court granted that motion. The jury returned a unanimous verdict in favor of Novoa.

Zeller has appealed raising the following issues for our consideration:

I. "Whether the lower court erred in failing to instruct the jury on a cause of action under the doctrine of informed consent."

II. "Whether the lower court erred in failing to grant Plaintiff's requested instruction No. 2A, that comparable treatment by several local hospitals did not create the appropriate standard of care by which to judge the Defendant's conduct."

III. "Whether the lower court erred in failing to grant Plaintiff's requested instruction No. 5, that the Defendant could be subject to liability if he was found to have prescribed Estrace as part of a personal experimental or testing program which was not conducted in accordance with prevailing standards of care regarding such protocols."

---

1. Zeller did not appeal that ruling on the child's behalf. The viability of a cause of action for wrongful life is not an issue in this appeal.

IV. "Whether the lower court erred in failing to grant Plaintiff's requested instruction No. 7A, that the Defendant's contention, that no prevailing standards of care existed in 1981 regarding the prescription of postcoital drugs for rape victims, was an affirmative defense, which required the Defendant to meet the burden of proof thereon by the preponderance of the evidence."

V. "Whether the lower court erred in instructing the jury that, in mitigation of the Plaintiff's damages, it could consider the emotional and societal benefits conferred upon her by the birth of her child."

VI. "Whether the trial court erred in failing to sequester the jury during the pendency of its deliberation."

Zeller also contends that the court erred in directing a verdict in favor of GBMC. GBMC has cross-appealed contending that

"[t]he trial court erred in finding jurisdiction over Greater Baltimore Medical Center as to Count I of the Declaration because cross-appellees failed to reject or to seek to nullify the award in favor of G.B.M.C."

In light of our holding affirming the judgment entered in favor of Novoa, it is unnecessary for us to address either of the issues regarding GBMC's alleged vicarious liability.

## JURY INSTRUCTIONS

A litigant is entitled to have his or her theory of the case presented to the jury if that theory is a correct exposition of the law and if there is evidence in the case which supports that theory. *The Sergeant Co. v. Pickett,* 285 Md. 186, 401 A.2d 651 (1979), *quoting Levine v. Rendler,* 272 Md. 1, 13, 320 A.2d 258 (1974). In advancement of that proposition, Rule 2–520(c) provides:

"How Given.—The court may instruct the jury, orally or in writing or both, by granting requested instructions, by giving instruction of its own, or by combining any of these methods. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given."

Against this background, we will discuss each of appellant's requested instructions, and the propriety of the court's denial of those requests.

## Informed Consent

Appellant requested an instruction on the law of informed consent which the court declined. We hold the court did not err in refusing that request for two reasons.

### —Failure to Plead Issue—

Appellant asserts that since the issue of informed consent was raised by the evidence, the failure to submit the question for jury deliberation was error.

Appellee Novoa retorts that not only was the evidence adduced insufficient to sustain the instruction, but that "[i]t is axiomatic that before a plaintiff may receive an instruction to the jury based upon the doctrine of informed consent, she must first properly plead ... such a case." Reviewing appellant's Declaration and Answers to Interrogatories, appellee Novoa avers these documents demonstrate appellant's failure to plead the issue.

Appellant responds to this charge by claiming that appellee Novoa has waived any right to contend that the issue of informed consent was not raised "by virtue of his proceeding to trial on the merits of that issue and failing to object to any of the evidence offered to prove it." In support of her argument, she refers us to M.L.E. "Pleading," § 145; *Wathen v. Pearce,* 175 Md. 651, 3 A.2d 486 (1939); *Richardson v. Anderson,* 109 Md. 641 (1909); and *Straus v. Young,* 36 Md. 246 (1872). These authorities are of no assistance to appellant.

■ Through her references, appellant seeks to invoke the procedural device of a "variance." A variance is a discrepancy between the allegations of the pleadings and the proof adduced. Black's Law Dictionary 1392 (5th ed. 1979). This case does not present a variance. What is presented instead is appellant's complete failure to plead a specific cause of action. The rendering of medical services

absent informed consent, if pled properly, constitutes a separate and new count of negligence. *See Sard v. Hardy,* 281 Md. 432, 379 A.2d 1014 (1977). The law is settled that "[a] party cannot allege one cause of action and introduce evidence to prove another and different one." *McTavish v. Carroll,* 17 Md. 1 (1861). The purpose behind this principle is clear. A defendant must have notice of the allegations lodged so he or she can use his or her best efforts to disprove the charges.

The doctrine of variance has been subsumed by the adoption of liberal amendment rules which permit a party to amend his or her declaration to conform to the evidence. In *Staub v. Staub,* 31 Md.App. 478, 356 A.2d 609, *cert. denied,* 278 Md. 735 (1976), now Chief Judge Gilbert writing for this Court reaffirmed that Maryland has adopted a liberal view toward amendments. Quoting 3 *Poe's Pleading and Practice* § 184 (6th ed. H.M. Sachs, Jr. 1975), *Staub, supra* noted:

> " 'Amendments now liberally allowed. —These provisions [the Maryland Rules] are so clear as to call for but little comment. They indicate great liberality in the allowance of amendments, in order to prevent the substantial justice of a cause from being defeated by formal slips or slight variances, and under their operation the practical injustice which formerly disfigured the administration of the law, in consequence of the enforcement of strict technical rules of pleading, is greatly diminished.' " (Brackets in original.)

*Id.* at 482, 356 A.2d 609. Further, "cases may, by amendment, be changed from one form of action to another...." 3 *Poe's Pleading and Practice* § 185, *supra.*

■ Appellant did not attempt to amend her pleadings to include a negligence count based on informed consent,

although the rules permit a request to amend until the jury retires to deliberate. Rule 2–341(b).[2]

Thus, since the requested instruction on informed consent was not based upon any theory set out in the pleadings, and no amendment was requested, the court properly denied the instruction. *See Smith Co. v. Smick,* 119 Md. 279, 86 A. 500 (1913).

## —Elements of Informed Consent—

Even if we were to hold that appellant properly pled in her Declaration the failure to obtain her informed consent, the court did not err in refusing to give the instruction.

As we stated, a party is entitled to have his or her theory submitted to the jury, but only if that theory is a correct statement of the law. *The Sergeant Co. v. Pickett, supra.* In the case *sub judice,* appellant's requested instruction was not an accurate exposition of the law of informed consent. That instruction provided:

> "Members of the jury, you are instructed as a matter of law that the standards of medical, gynecological or hospital care that existed in 1981 and indeed today requires [sic] any physician who is attempting to use a new or untested drug or a new method of treatment not yet recognized as a standard of care of his or her particular specialty, must first obtain informed consent from the patient prior to utilizing such drug and/or such treatment. Should you find from the evidence in this case that [appellee] Novoa failed to obtain informed consent from [appellant], then I instruct you that such failure was a violation of the accepted standards of care and that such violation is the equivalent of negligence."

Appellant's instruction is defective because it assumes the existence of several crucial facts which the jury must first determine before it can conclude negligence on the part of appellee Novoa.

---

**2.** We do not speculate on whether the court would have granted appellant leave to amend or what conditions would have been imposed if granted.

In *Sard v. Hardy, supra,* the Court of Appeals set out the doctrine of informed consent, recognizing that except in emergency situations, "the doctrine of informed consent imposes on a physician, before he subjects his patient to medical treatment, the duty to explain the procedure to the patient and to warn him of any material risks or dangers inherent in or collateral to the therapy, so as to enable the patient to make an intelligent and informed choice about whether or not to undergo such treatment." (Citation omitted). *Id.* 281 Md. at 439, 379 A.2d 1014. The Court continued:

"[T]he scope of the physician's duty to inform is to be measured by the materiality of the information to the decision of the patient. A material risk is one which a physician knows or ought to know would be significant to a reasonable person in the patient's position in deciding whether or not to submit to a particular medical treatment or procedure." (Citations omitted).

*Id.* at 444, 379 A.2d 1014.

■ To sustain a cause of action for this type of negligence, the fact finder must determine several facts to be in existence: that there was no emergency need for the treatment; that the physician did not inform the patient of the material risks of the treatment; that a reasonable person in the patient's position would not have consented had there been a disclosure of the material risks; and finally that the patient's injuries resulted from a violation of the standard of care. *Sard v. Hardy, supra.*

The requested instruction did not instruct the jury fully. Instead, the instruction set out the standard of care and then directed the jury to find for appellant if the evidence showed appellee Novoa did not get appellant's consent. *Contra Thimatariga v. Chambers,* 46 Md.App. 260, 416 A.2d 1326, *cert. denied,* 288 Md. 744 (1980). (If the jury finds that: injuries resulted from a violation of the standard of care; there was no emergency need for surgery; the doctor did not inform the patient of the risks of surgery;

and a reasonable person would not have consented to the surgery if informed of the risks, the jury may find for the patient).

To state the law correctly, the instruction should have been if the jury found that 1) appellant was not in need of emergency treatment; 2) Estrace was in fact an experimental or untested drug; 3) appellee did not inform appellant of its experimental use; 4) a reasonable person would not have taken the drug upon learning this information; and 5) appellant's damages resulted from this failure to inform her properly their verdict should be for appellant. The instruction as proferred amounts to a directed verdict. It is a blatant misstatement of the law, and the court properly refused to give it.

In light of our holding that appellant failed to plead the issue of informed consent and additionally misstated the law, we need not determine whether the evidence adduced was sufficient to support the instruction.

### Comparable Treatment

Appellant asserts the court erred by failing to instruct the jury that comparable treatment by several local hospitals did not create the appropriate standard of care by which to judge appellee Novoa's conduct. Appellant sought an instruction which provided in part:

"Thus, I instruct you that the fact that two or even three hospitals did not adhere to national standards would not alter the standards which prevailed.

\* \* \* \* \* \*

"Thus, whether the local hospitals used the drugs recommended or no drug is not the criteria of whether the standards of care had been followed.

"As discussed, the standard of care in gynecology is a national standard, as would be followed by a reasonably competent, board certified gynecologist under the same or similar circumstances."

The trial judge instead instructed the jury that appellant had the burden of proving that appellee Novoa failed to adhere to the accepted medical standard of practice and the standard to be applied in this case was a national standard.

Appellant asserts her instruction discounting the evidence relating to local hospital practices was critical to "dispel a misconception of the true legal standard of care." She premises her argument on the fact that appellee Novoa presented evidence that his treatment of rape victims was consistent with or comparable to that offered in other local hospitals, including Mercy Hospital and University Hospital in Baltimore. That testimony, however, was offered without objection. The effect of the instruction if given as requested by appellant would have been to direct the jury to ignore appellee's testimony.

In *Lamb v. Taylor*, 67 Md. 85, 8 A. 760 (1887), the Court of Appeals established that a jury instruction is not the proper vehicle for objecting to alleged improper testimony. The Court stated that

> "a prayer cannot properly be made to perform the office of an objection to illegal testimony. If any of the testimony, offered by [a party] was not legal testimony in the cause, it was the duty of the [other party] to object to its admissibility, at the time it was offered. When the objection is to the evidence, if it is known or apparent, it must be taken before, and not after, it has gone to the jury. If unaware of the objection to the admissibility of such evidence at the time of its offer, he must raise his objection within a reasonable time thereafter."

*Id.* at 93, 8 A. 760.

In the case *sub judice*, the court instructed the jury "that in this case a national standard of practice is the applicable standard to be applied." The instruction given was a correct statement of the appropriate standard of practice in medical malpractice cases. *See Shilkret v. The Annapolis Emergency Hospital Association*, 276 Md. 187, 349 A.2d 245 (1975). The court need not grant a requested

instruction if the matter is fairly covered by the instructions actually given. Rule 2–520(c). Additionally, the instruction was specific that the prevailing standard was a national one. There could be no misconception as to the standard the jury was to apply.

■ Moreover, the instruction as requested was a direction to strike certain evidence which was admitted without objection or alternatively an invitation for the court to comment on the weight to be given to appellee's testimony. The trial judge was under no obligation to strike the evidence or to comment on its weight. The court properly denied the request.

### Prescribing Medicine in an Experimental Program

■ As her next assignment of error, appellant alleges that the court erred in failing to grant her instruction that a physician "could be subject to liability if he was found to have prescribed Estrace as part of a personal experimental or testing program which was not conducted in accordance with prevailing standards of care regarding such protocols." That instruction provided:

"Members of the jury, you are instructed as a matter of law that the evidence has established that any physician undertaking to conduct a study and/or utilize a drug as part of a study that has not yet been tested, must conduct such tests in accordance with a recognized procedure. Such procedure is carried out in such fashion as to give supervision and control to the study. This material thus gains acceptance and approval by peers prior to their utilization of the drug for reason that the testing was carried out under a recognized protocol.

"In the instant case it is undenied that the [appellee] Novoa's utilization of Estrace ... was a utilization by him without the sanction and/or approval of a recognized protocol and the aegis of a medical school and/or hospital. Thus such testing and/or data-gathering by the utiliza-

tion of Estrace fell outside the accepted standards of medical care.

"The [appellee], through his prescription of Estrace, did not conform to accepted standards of medical practice."

In support of her claim of error, appellant avers that a doctor's deliberate use of an experimental drug or other treatment regimen, while withholding generally recognized and proven conventional therapy, gives the patient a cause of action for medical malpractice, in the absence of evidence indicating full informed consent by the patient.

Appellant's instruction is flawed. The predicate for the instruction is that the evidence established that appellee Novoa was conducting a study or utilizing a drug to conduct tests not in accordance with recognized procedure. The evidence might have supported such an inference, but it also supported a different inference, specifically that appellee Novoa was merely documenting and analyzing pregnancy-rate data he acquired over a substantial number of years. A record or log of treatment and results is not necessarily an experiment or test.

Further, the charge rather than being couched as an instruction to the jury as to liability if they found certain facts was actually an instruction directing the verdict for appellant. Whether appellee Novoa was conducting an unapproved experiment absent appellant's informed consent was a question for the trier of fact.

Moreover, the instructions as given by the court on the elements of a malpractice action and the standard of care were broad enough to permit appellant to argue to the jury that appellee Novoa's conduct violated acceptable standards. The court did not err in refusing what amounted to a directed verdict on the issue of liability.

### Affirmative Defense

■ At trial, appellee Novoa contended that no prevailing standards of care existed in 1981 regarding the prescription of postcoital drugs for rape victims.

Appellant avers the court erred in refusing to instruct that this contention amounted to an affirmative defense, requiring the doctor to establish that defense by a preponderance of the evidence. She argues that since the burden of proof rests on the party who asserts the affirmative of a claim or defense, she was entitled to an instruction to that effect because appellee Novoa raised as an affirmative defense the non-existence of medical standards. The instruction requested by appellant accepted her burden of proving a violation of the standard of care, but also allocated to appellee Novoa the burden of proving by a fair preponderance of the evidence that there were no standards in existence which could be violated by him or any other practitioner under the same or similar circumstances.

We defined the term "affirmative defense" in *Armstrong v. Johnson Motor Lines, Inc.,* 12 Md.App. 492, 500, 280 A.2d 24, *cert. denied,* 263 Md. 709 (1971), as "one which directly or implicitly concedes the basic position of the opposing party, but which asserts that notwithstanding that concession the opponent is not entitled to prevail because he is precluded for some other reason."

Turning to the case *sub judice,* the assertion that there is "no prevailing standard of care" does not concede that appellee Novoa violated a specific standard of care requiring the administration of particular postcoital drugs to rape victims in 1981. In fact, it presupposes quite the contrary. It states he did not violate the standard because it denies the existence of such a standard. Such a contention raises no new matter, but merely asserts that appellant must prove a standard of care existed regarding use of postcoital drugs in 1981. Hence appellee's defense was not an affirmative defense. As such, the instruction was incorrect and properly rejected.

### Emotional and Societal Benefits Conferred by the Birth of a Child

Lastly, in connection with the jury instructions, appellant contends the trial court erred in instructing the jury that in

mitigation of damages it could consider the emotional and societal benefits conferred upon her by the birth of her child. In view of our decision upholding the judgment as to liability, we do not need to reach the issue of damages.

■ In summation, we reiterate that a litigant may not use an instruction as a vehicle for adding a cause of action, objecting to or striking out allegedly improper evidence, or as an avenue for directing a verdict. Proper procedural devices are available to accomplish those goals. Moreover, a party may not use an instruction as a forum for manipulating or misstating the law. Jury instructions represent a vital link in our trial system and must not be misused.

### SEQUESTRATION OF THE JURY

After the jury was instructed and arguments heard on Friday, February 22, 1985, the panel was excused until the following Monday. No objection was raised by appellant.

The jury returned on Monday, February 25 and retired to begin deliberations at about 9:50 a.m. At 1:20 p.m., they sent a note to the trial judge asking for further instructions on the meaning of negligence and proximate cause. At 4:00 p.m. the forelady sent a note indicating that the jury was deadlocked at 7 to 5. The judge gave the approved *Allen* charge and sent the jury back for further deliberations. At 6:52 p.m., the group again sent word to the court: "We are still undecided. Vote is 7 to 5." The judge sent back a note inquiring if there was any possibility of reaching a verdict that evening. The jury responded that there was no possibility of reaching a verdict that evening, but they believed they could reach a verdict if they had a "fresh start in the morning."

The clerk reported that the jury "expressed" the fact that they wished to make a decision because "they care." The trial judge discussed the jury's response and the clerk's comments with counsel. The court decided to send the jury home for the night. Appellant objected to the separation and moved for a mistrial which was denied.

Jury deliberations were suspended at 7:26 p.m. The court carefully admonished the panel not to discuss the case and issues with anyone until they reassembled the next morning. The jury was allowed to go home for the night.

The jury returned the next day, February 26, 1985. After further deliberation, a unanimous verdict in favor of appellee Novoa was rendered.

■■■■■ Appellant posits that because the verdict was rendered within forty-five minutes, the relatively quick decision of the jury the next day suggests the likelihood of outside influence. She bolsters that allegation with the statement that the trial was a high-profile, well-publicized claim.

Rule 2–511(c) provides:

"The court, either before or after submission of the case to the jury, may permit the jurors to separate or require that they be sequestered."

No presumption of prejudice flows from such a separation. *Graef v. State*, 1 Md.App. 161, 228 A.2d 480 (1967). The court warned the jurors against communications with others while separated over night. Appellant did not object to the warning as given. Nor did she ask for any specific instruction cautioning the panel against exposure to the media during the period they were separated. There is nothing in the record that suggests, much less establishes, any influence or tampering—overt or accidental. Further, when they returned to deliberate, the appellant did not ask the court to voir dire the jurors to ascertain if any impropriety had in fact occurred. Error will not be presumed from a silent record. Rule 1085. We perceive no basis to conclude that the court abused its discretion by separating the jury panel.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.