**Tina Smedley REED, et al.**

v.

**Mary CAMPAGNOLO, et al.**

**Civ. No. L–91–512.**

United States District Court,
D. Maryland.

Jan. 6, 1993.

Roy B. Cowdrey, Jr. and Robert M. Messick, Jr., Easton, MD, for plaintiffs.

Angus R. Everton, Baltimore, MD, for defendants.

## MEMORANDUM AND CERTIFICATION ORDER

LEGG, District Judge.

Plaintiffs seek damages resulting from the birth of a child who suffers from a variety of genetic birth defects. Briefly stated, plaintiffs contend that the defendants, two physicians, failed to inform Mrs. Reed, who was pregnant, of the existence and need for pre-natal testing which would have revealed the child's defects in utero. Armed with this information, Mrs. Reed would have terminated her pregnancy, contend plaintiffs. Plaintiffs' two theories of recovery are wrongful birth and lack of informed consent.

Defendants in this case have filed a motion to dismiss, or in the alternative, for summary judgment, asserting that (i) Maryland does not recognize a cause of action in tort for wrongful birth and (ii) that plaintiffs' theory of recovery for lack of informed consent is similarly not recognized in Maryland. The motion has been fully briefed and no hearing is necessary. Local Rule 105.6 (D.Md.).

### I.  FACTS

The plaintiffs in this case are a severely deformed child and her parents. The child, Ashley Nicole, suffers from a variety of genetically caused abnormalities, including meningomyelocele (spina bifida), hydrocephaly, imperforate anus, and ambiguous genitalia. Compl. at ¶ 16. The infant also has only one kidney, a fistula connecting her bladder and intestines, and increased head circumference, which required the insertion of a cerebral-abdominal shunt after birth. Compl. at ¶ 20.

Defendants, Mary Campagnolo, M.D. ("Campagnolo"), and Bruce Grund, M.D. ("Grund"), are two physicians who administered pre-natal care to Tina Reed at a Caroline County Health Department Maternity Clinic in Caroline County, Maryland.

Plaintiffs contend that defendants failed in the course of pre-natal care to "inform plaintiffs of the existence or need for routine alpha-feto protein ("AFP") testing of maternal serum to detect serious birth defects such as spina bifida and imperforate anus." Compl. at ¶ 22. Had they been informed about AFP testing they would have requested it. Compl. at ¶ 23. Had such testing been done, it would have revealed elevated protein levels, indicative of an abnormal fetus, which would have led plaintiffs to request amniocentesis. Amniocentesis, claim plaintiffs, would have revealed the extent of the fetus's defects and plaintiffs ultimately would have chosen to terminate the pregnancy. Compl. at ¶¶ 26–31.[1]

Plaintiffs' complaint contains three counts. Count I (Wrongful Birth) alleges negligent failure to inform the parent plaintiffs about the existence, benefits, and risks of AFP testing, amniocentesis, and abortion of a severely deformed fetus, and negligent failure to recognize and evaluate the signs and symptoms of an abnormal pregnancy.

Count II (Lack of Informed Consent) alleges failure to inform the parent plaintiffs about the various risks of birth defects, testing procedures for birth defects, and the option of aborting a severely deformed fetus.

Count III (Third Party Beneficiary Maintenance After Age of Majority) alleges a duty owed to all plaintiffs, including the baby, to inform about risk of birth defects, tests available to detect defects, and the option of abortion of a severely deformed fetus.

▮ Defendants have argued, and plaintiffs have conceded, that Maryland does not recognize a cause of action for wrongful life, so Count III, which this Court reads as a cause of action for wrongful life, has been abandoned by plaintiffs.[2] See Pls.' Mem. in Opp. to Mot. for Summ. J. at 2. Still before this Court are the wrongful birth[3] and lack of informed consent allegations contained in Counts I and II.

Defendants rendered prenatal care at a Caroline County maternity clinic to Mrs. Reed beginning in the third month of her pregnancy with Ashley. The parties agree that Mrs. Reed was never informed about AFP testing, a procedure which reveals abnormal levels of proteins produced by the fetus. Abnormal protein levels may indicate genetically caused neural tube defects, including spina bifida.[4] This test must be performed between weeks 16 and 18 of the pregnancy to obtain reliable results.[5]

1. According to the complaint and her statements to maternity clinic staff at the time of her clinic intake, Mrs. Reed obtained an abortion in 1980.

2. Wrongful life is a suit by the child against the doctor. It is not generally recognized, presumably because it requires the child to argue that his or her deformed life, as opposed to no life at all, is a compensable injury.

3. A wrongful birth cause of action is one in which the parents are the plaintiffs suing the doctor for negligence which denied them the opportunity to abort the pregnancy.

4. AFP testing detects approximately sixty percent of neural tube defects, according to plaintiffs. Thus, approximately forty percent of neural tube defects go undetected, even with full testing.

AFP testing alone, however, cannot pinpoint the nature and extent of a fetus's deformities. Ultrasound and/or amniocentesis often, but not always, reveals the nature and extent of any fetal deformities. Patient consent is required for each individual test in this process, and a patient may decline further tests at any point.

Like any medical test, there are false positives with AFP testing. The overwhelming majority of women with abnormal AFP test results are carrying normal, healthy fetuses. In some cases the elevated AFP level is never explained. In many of these unexplained cases the woman gives birth to a normal, healthy child.

5. The accuracy of AFP test results depends in large part upon an accurate estimation of gestational age. This estimation is usually the result of information given by the patient about her last menstrual period. It can also be obtained by sonogram.

Plaintiffs argue that the standard of care at the relevant time required Grund and Campagnolo to inform Mrs. Reed about the availability, benefits, and risks of AFP testing. Plaintiffs also argue that an AFP test, coupled with the physical examinations at her prenatal visits, should have put defendants on notice that Mrs. Reed's pregnancy was not routine.

Defendants respond that AFP testing was not routine for all patients at the relevant time, but rather was indicated only for those pregnant women who had a family history indicating risk for neural tube defects or a personal reproductive history indicative of an at-risk pregnancy. Defendants also note that AFP testing was not part of the regular package of tests offered to clinic patients with routine pregnancies, and that there were no factors indicating that Mrs. Reed was experiencing an at-risk pregnancy.[6]

## II. DISCUSSION

Defendants argue that the allegations contained in Counts I and II do not fall within any tort cause of action presently recognized in Maryland. Neither party has brought to the Court's attention, and this Court has been unable to find, any Maryland case which directly addresses either cause of action alleged in this case.

### A. *Wrongful Birth*

█ As this Court understands it, a wrongful birth claim is one asserted by parents, alleging that the treating physician's negligence proximately caused them to have a child that they would otherwise have aborted. A wrongful birth claim differs from the usual medical malpractice claim because the child's deformities are genetic and therefore not caused by any act or omission of the physician. The physician is not accused of causing the child's deformities, but is rather accused of causing its birth, by failing to detect the defects and therefore denying the parents the opportunity to abort a severely deformed fetus.

Defendants contend that the Court of Appeals of Maryland has never recognized such a cause of action and that the case of *Gaver v. Harrant*, 316 Md. 17, 557 A.2d 210 (1989), indicates the Court of Appeals' reluctance to expand tort liability to persons who are not themselves directly injured. They argue that the parents' claim, like the children's claim in *Gaver*, is derivative because the only cognizable injury in this case is to Ashley, who suffers from the birth defects. Defendants also warn that if wrongful birth cases are permitted, parents may, after the birth, testify that given the opportunity to terminate a pregnancy involving a severely deformed fetus they would definitely have done so, without actually having to face that difficult choice. There are, note defendants, many couples who choose to bring their child to term knowing that he or she is likely to suffer severe birth defects.

The Court of Appeals in *Gaver* expressed a reluctance to recognize a common law cause of action when to do so would conflict with the public policy of the state, which is the function of the Legislature to announce. Defendants have identified no such public policy conflict here. They argue that recognition of a wrongful birth cause of action would be a public statement in support of abortion. As plaintiffs note, however, abortion is and was at all relevant times legal in the state of Maryland; therefore, recognizing a wrongful birth cause of action would not necessarily conflict with any existing public policy defined by the Legislature.

Plaintiffs counter that the majority of states recognize a cause of action for wrongful birth[7] and that defendants are

---

6. Except as noted, the information regarding testing procedures used to detect neural tube defects was obtained from the Maryland State Department of Health and Mental Hygiene Maternity Care Manual from 1982, with updated inserts from later dates.

7. The following states recognize a cause of action for wrongful birth: Alabama, *Robak v. United States*, 658 F.2d 471 (7th Cir.1981) (applying Alabama law in a suit brought under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.); California, *Andalon v. Superior Court*, 162 Cal.App.3d 600, 208 Cal.Rptr. 899 (1984); District of Columbia, *Haymon v. Wilkerson*, 535

incorrect in characterizing the parents' claim as derivative. The defendants' negligence, the parents assert, precluded Mrs. Reed from making a decision to terminate her own pregnancy. Plaintiffs cite *Jones v. Malinowski*, 299 Md. 257, 473 A.2d 429 (1984), and *Zeller v. Greater Baltimore Medical Center*, 67 Md.App. 75, 506 A.2d 646 (1986), for the proposition that Maryland common law recognizes causes of action for compensable injury to parents when a healthy child is born as a result of medical negligence.

Plaintiffs claim that although the Court of Special Appeals of Maryland, in affirming the jury's verdict for the defendant physician, did not reach the merits of the "wrongful birth" claim in *Zeller v. Greater Baltimore Medical Center*, that the *Zeller* arbitration board and trial court implicitly accepted it as a valid tort cause of action. Although the *Zeller* court labelled that case a "wrongful birth" case, this Court believes it is more correctly classified as a wrongful conception case. In any event, *Zeller* differs from the Reeds' suit because *Zeller* involved a definite medical treatment which failed—the prescription of the drug Estrace in an effort to prevent conception after the plaintiff was raped.

*Zeller* is more analogous to *Jones v. Malinowski*, 299 Md. 257, 473 A.2d 429 (1984), than to the Reeds' case because prescribing Estrace negligently, which fails to prevent a birth, is similar to negligently performing a sterilization procedure, which fails to prevent conception. Both cases involve affirmative action or treatment by the physician with the goal of preventing birth of a child. Neither case embraces the allegedly negligent withholding of information about the availability of tests which might have revealed the genetic defects of a fetus, thus leading the parents to choose to terminate the pregnancy.

Although the *Jones* court unequivocally recognized a tort cause of action for the negligent performance of a sterilization operation, this Court is unsure whether a wrongful birth action flows therefrom.

### B. *Informed Consent*

The Court of Appeals of Maryland defined the common law negligence cause of action for lack of informed consent in *Sard v. Hardy*, 281 Md. 432, 379 A.2d 1014 (1977). Defendants contend that a cause of action can arise only out of the affirmative performance of a medical treatment or surgical procedure by the physician without first obtaining the informed consent of the patient. Plaintiffs, on the other hand, maintain that a physician's failure to inform a patient about the benefits and risks of various types of treatments and tests (in this case AFP testing followed by an abortion) render the patient's "decision" to fore-

A.2d 880 (D.C.1987); Florida, *Moores v. Lucas*, 405 So.2d 1022 (Fla.Dist.Ct.App.1981), *Kush v. Lloyd*, 1992 WL 354441, 1992 Fla. LEXIS 2017 (Fla.1992); Idaho, *Blake v. Cruz*, 108 Idaho 253, 698 P.2d 315 (1984); Illinois, *Siemieniec v. Lutheran Gen. Hosp.*, 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691 (1987); Louisiana, *Pines v. Moreno*, 569 So.2d 203 (La.Ct.App.1990); Maine, Me.Rev.Stat.Ann. tit. 24, § 2931 (West 1991 Supp.); Michigan, *Proffitt v. Bartolo*, 162 Mich.App. 35, 412 N.W.2d 232 (1987), *appeal denied*, 430 Mich. 860 (1988); New Hampshire, *Smith v. Cote*, 128 N.H. 231, 513 A.2d 341 (1986); New Jersey, *Hummel v. Reiss*, 129 N.J. 118, 608 A.2d 1341 (1991); New York, *Becker v. Schwartz*, 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807 (1978); North Carolina, *Gallagher v. Duke Univ.*, 638 F.Supp. 979 (M.D.N.C.1986), *aff'd in part, vacated in part*, 852 F.2d 773 (4th Cir. 1988) (applying North Carolina law to case brought under Federal Tort Claims Act); Pennsylvania, *Speck v. Finegold*, 497 Pa. 77, 439 A.2d 110

(1981); South Carolina, *Phillips v. United States*, 508 F.Supp. 544 (D.S.C.1981) (applying South Carolina law to case under Federal Tort Claims Act); Texas, *Jacobs v. Theimer*, 519 S.W.2d 846 (Tex. 1975); Virginia, *Naccash v. Burger*, 223 Va. 406, 290 S.E.2d 825 (1982); Washington, *Harbeson v. Parke–Davis, Inc.*, 98 Wash.2d 460, 656 P.2d 483 (1983); West Virginia, *James G. v. Caserta*, 175 W.Va. 406, 332 S.E.2d 872 (1985); Wisconsin, *Dumer v. St. Michael's Hosp.*, 69 Wis.2d 766, 233 N.W.2d 372 (1975).

The following states do not recognize such a cause of action: North Carolina, *Azzolino v. Dingfelder*, 315 N.C. 103, 337 S.E.2d 528 (1985), *cert. denied*, 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986); Georgia, *Atlanta Obstetrics & Gynecology Group v. Abelson*, 260 Ga. 711, 398 S.E.2d 557 (1990); Missouri, *Wilson v. Kuenzi*, 751 S.W.2d 741 (Mo.1988), *cert. denied*, 488 U.S. 893, 109 S.Ct. 229, 102 L.Ed.2d 219 (1988).

go them uninformed.[8]

*Sard v. Hardy* establishes that the tort of lack of informed consent in Maryland is a negligence, not a battery, cause of action. This some lends support to plaintiffs' argument.

Defendants, however, contend that it is impossible to prove causation, as required by traditional tort analysis, in lack of informed consent cases when the injury is the missed opportunity to undergo an abortion. They claim that the causal chain is too long and the injury too remote. More than one test is required to detect and diagnose birth defects in time for abortion to be an option, and there are risks and uncertainties the pregnant woman must consider at each step. Thus, argue defendants, it is impossible in all cases alleging wrongful birth to prove causation or injury.

The issues in this context are (i) whether the continuation of a pregnancy is a course of medical treatment to which parents must consent, and (ii) if so, then, whether genetic testing is a medical treatment or procedure which can form the basis for a lack of informed consent case in Maryland.

## III. CONCLUSION

▌ There are issues presented, which may be entirely determinative of the cause now pending before the Court, and which are strictly questions of Maryland law on which there appears to be no controlling precedent. If neither of plaintiffs' tort theories of recovery is recognized by the State of Maryland, then this Court must dismiss the case. In the interest of comity, and pursuant to Md.Cts. & Jud.Proc.Code Ann. § 12–601, this Court therefore certifies the following potentially dispositive questions to the Court of Appeals of Maryland:

1. Whether the State of Maryland recognizes a tort cause of action for wrongful birth when the doctor does not inform the patient about an available diagnostic test which might reveal the possibility of neural tube defects of the fetus, when these defects are genetically caused, when further diagnostic testing would be required to determine the nature and extent of any fetal defects, and when the plaintiff asserts she would have aborted the child had she been made aware of the fetus's deformities.

2. Whether the continuation of a pregnancy is a decision requiring the informed consent of the patient which can give rise to a Maryland tort cause of action for lack of informed consent when the allegedly negligent course of treatment is the defendant physician's failure to inform a pregnant patient about the availability, risks and benefits of diagnostic testing which might reveal birth defects, and failure to inform the patient about the benefits and risks associated with aborting a severely deformed fetus.

Accordingly, IT IS this 6th day of January, 1993, by the United States District Court for the District of Maryland, ORDERED:

1) That, pursuant to Md.Cts. & Jud.Proc. Code Ann. §§ 12–601 and 12–603, the United States District Court for the District of Maryland hereby certifies the following potentially dispositive questions of law to the Court of Appeals of Maryland:

i. Whether the State of Maryland recognizes a tort cause of action for wrongful birth when the doctor does not inform the patient about an available diagnostic test which might reveal the possibility of neural tube defects of the fetus, when these defects are genetically caused, when further diagnostic testing would be required to determine the nature and extent of any fetal defects, and when the plaintiff asserts she would have aborted the child had she been made aware of the fetus's deformities.

ii. Whether the continuation of a pregnancy is a decision requiring the informed consent of the patient which can give rise to a Maryland tort cause of

---

**8.** Plaintiffs argue in their brief that in some circumstances, physicians have a duty to disclose to patients sufficient information to allow the patient to make an informed decision about the physician's proposal to take no action. Plaintiffs, however, cite no case law for this contention nor do they enumerate these circumstances. Pl.'s Mem. in Opp. to Mot. for Summ. J. at 20–21.

action for lack of informed consent when the allegedly negligent course of treatment is the defendant physician's failure to inform a pregnant patient about the availability, risks and benefits of diagnostic testing which might reveal birth defects, and failure to inform the patient about the benefits and risks associated with aborting a severely deformed fetus.

2) That this Memorandum and Certification Order shall constitute the statement of relevant facts required by Md.Cts. & Jud. Proc.Code Ann. § 12–603 (Michie 1989).