## CHRISTINA L. MURPHY *v.* BOARD OF COUNTY COMMISSIONERS ET AL.

[No. 4, September Term, 1971.]

*Decided December 2, 1971.*

498

The cause was argued before MORTON, ORTH and POWERS, JJ.

*William E. Brooke* and *Alvin L. Newmyer, Jr.,* for appellant.

*Jess J. Smith, Jr.,* with whom was *Walter H. Maloney, Jr.,* on the brief, for Board of County Commissioners for Prince George's County, one of the appellees. *Albert T. Blackwell, Jr.,* with whom were *Blackwell, Miller & Markey* on the brief, for Passero and Parreco t/a Central Construction Company, another appellee and *Laurence T. Scott* for the Washington Suburban Sanitary Commission, other appellee.

POWERS, J., delivered the opinion of the Court.

The personal injury damage suit of Christina L. Murphy against the Board of County Commissioners for Prince George's County, the Washington Suburban Sanitary Commission, and Eugene Passero and Edmund Parreco, trading as Central Construction Company, was tried before a jury and Judge Samuel W. H. Meloy in the Circuit Court for Prince George's County on October 14, 15, 16 and 19, 1970.

In the evening of October 19th the jury returned a verdict in favor of the defendants. After a motion for a new trial was filed, heard and denied, judgment was entered in favor of the defendants against the plaintiff for costs. From that judgment Mrs. Murphy appealed.

### The Happening of the Accident

Appellant testified that at about 9:30 P. M. on April 27, 1967, she was driving alone to visit a girl friend, and had turned onto Hagan Road in Prince George's County, where she had an accident. She said, of Hagan Road, "It's a small—it's a narrow road, two cars can, you know, fit on it, but it's a very narrow road. Sort of a country type road with shoulders that vary in size on both sides."

Asked to describe how the accident happened, she said, "I was on the right side, my side, but I always stayed towards the middle until I approached another car. * * * It's a curvy road. * * * I just completed a small curve and I was on a straight stretch, small straight stretch, when I noticed the other car with its high beams approaching me. * * * When I saw this other car and his high beams were on, I had first dimmed my high beams, and I pulled slightly to the right and slowed down somewhat. * * * Then as the car passed me I slowed down a little bit more and pulled slightly more to the right, and this is when I heard the—I felt the thump and the noise, a loud noise, and I hit my head. I recall a sensation of a bumping sensation, but—and the car

darting forward, but this is hazy. * * * I was definitely on the right side, way over. You know, I was off the road. I was on the road, but—I was on my side. * * * I was on the road. I could have been slightly on the shoulder, but no more than that. * * * I could have been a couple inches on the shoulder, and I could have been very well on the shoulder part, but not too much. * * * I turned the car slightly to the right to be sure—his beams were so high—that I wouldn't hit him. I moved the car more to the right and took my foot off the accelerator to slow the car."

Her next recollection was when she woke up at the hospital. She had sustained severe injuries.

Some time later, upon revisiting the scene, appellant testified, she observed that there was a culvert in front of 4919 Hagan Road. She said it was four feet from the road, and that she knew that she didn't strike that culvert because she was never more than two or three inches at the very most off the road onto the shoulder. She said that the speed limit there was 20 or 25, and her speed was 20 miles an hour; that she took her foot off the accelerator when she saw the approaching high beams, and took it off again when she pulled over to her right; and that she estimated she was going 10 or 12 miles an hour when she felt the big thump and loud noise. She never hit the brake. She said there was nothing the other car did that forced her to move over, except that the lights bothered her, and that he was on his side of the road. She felt the thump or jolt, but did not see anything there. She wasn't looking down at the shoulder.

Officer Albert I. Alexander of the Prince George's County Police testified that on the evening of April 27, 1967, he responded to a call of an accident in front of 4919 Hagan Road, a secondary road, 18 feet wide, two lanes, blacktop, no curbline. He saw a white '66 Ford that had struck a tree. There was a hole on the shoulder in front of 4919 Hagan Road. The hole was three feet ten inches by two feet nine inches by one foot five inches

deep. He saw a tire track going on the shoulder of the road toward the hole. Fifty-four feet beyond the hole was a pole, on which the officer found white paint, and at the base of which he found the right rear taillight frame from the Murphy car. The car was against a tree sixty-one feet beyond the pole. He saw tire marks leading from the hole to the pole. Photographs, one or more of which showed the hole, were received in evidence.

The officer said that the weather was cloudy but dry, and there was no illumination. He indicated on a diagram that the appellant's vehicle left the macadam surface at the first driveway on the right that leads to the Mattingly property. There was a pipe under the driveway and a small drainage area along the road there. The tire tracks he observed were from the drop-off at the corner of the driveway. Red flares were put up at the site by the police.

There was other evidence that Central Construction Company had a job installing a sewer line on Hagan Road for the Washington Suburban Sanitary Commission. There was also evidence that a utility permit inspector for the Prince George's County Department of Public Works, riding on Hagan Road on the afternoon of April 26th, had "noticed a slight depression on the shoulder of the road". He noted it in his diary, and notified his dispatcher. He said it did not necessitate a warning device or barricade at that time. The depression he saw was not located any more specifically than the 4900 block of Hagan Road.

### Questions Involved in This Appeal

Appellant's brief poses the questions presented by this appeal to be whether the trial court erred:

I     in its rulings on the evidence,

II    in its instructions,

III   and in its failure to grant a new trial when matters were discovered subsequent to trial, which had a crucial bearing on the case.

# I

## *Rulings of the Court on Evidence*

A. Much of appellant's argument on this aspect of the case goes to the weight to be given to some of the testimony, and to the burden of proof upon the appellees on the question of whether appellant was contributorily negligent. The weight which any evidence should be given, as well as the credibility to be accorded to the testimony of any witness, is for the jury. *Aravanis v. Eisenberg,* 237 Md. 242, 262, 206 A. 2d 148, *Kowalewski v. Carter,* 11 Md. App. 182, 192, 273 A. 2d 212. Likewise, it is for the jury, and solely for it, guided by proper instructions of the court, to conclude whether any party has carried whatever burden he may have to prove any fact at issue.

No doubt to emphasize the prejudicial effect she contends flowed from erroneous rulings by the court, appellant argues that counsel for the appellees made misleading and highly prejudicial references and arguments to matters "dignified by rulings" of the court. We shall consider separately each ruling alleged to have been erroneous. As to the general argument, we can say only that we have reviewed the entire transcript of testimony, proceedings and arguments, consisting of over 500 pages, and we find no request that the court admonish the jury to disregard any statement of counsel, and no motion for mistrial. *Brinand v. Denzik,* 226 Md. 287, 173 A. 2d 203, *Baltimore & O. R. R. v. Plews,* 262 Md. 442, 464, 278 A. 2d 287, *Ferry v. Cicero,* 12 Md. App. 502, 508-509, 280 A. 2d 37.

The court told the jury, "You are to consider only the evidence in the case. * * * The statements of counsel, opening statements, closing arguments, are not evidence, and should not be considered as evidence * * *."

This general argument of appellant presents nothing to us for decision.

B. Mrs. Grace M. Hare was called by appellant as a witness. She said that she lived across the street from where the accident happened. Prior to that time, she had

observed the road. She said, "There were holes on the side of the road. * * * there was one that was quite big and came out a little bit further to the road." When asked how long that hole had been there she said, "Well, truthfully I wouldn't—couldn't say. It was wide." Then followed a long series of questions by appellant's counsel designed to have the witness state a length of time that the hole was there. Each question was objected to, and each objection was sustained. Finally the court observed, "The lady has testified that she doesn't know how long the hole was there. Under the circumstances I think further exploration would be redundant." She never associated the hole that was "quite big" with the accident.

Appellant argues that the court erred in these "restricted rulings". We see no error.

C. Appellant complains that Lawrence Pauley, called by her, was not permitted to testify as an expert. He said he had been in the sewer and water construction business for 25 years, the estimating and the office work, mainly. He had had his own crews doing this work, but had not supervised them on the job itself. He said he was familiar with the type of conditions that occur in this work. Appellant submitted his qualifications "as an expert". There was objection, because of no showing of "what he is supposed to be an expert as". The court sustained the objection. No further qualifications were proffered, nor was there any proffer of what the witness would say if permitted to testify.

On the question of whether a witness should be permitted to testify as an expert, the Court of Appeals, in *Spence v. Wiles*, 255 Md. 98, 257 A. 2d 164, said, at pages 102 and 103:

> "The rule is that before a witness is permitted to offer an expert opinion, it must be shown that he possesses both the necessary qualifications and also the factual information necessary to form such an opinion. * * * The qualifications of a proposed expert witness are a matter for the trial court to pass upon in the first instance,

and unless such ruling is clearly erroneous or a clear abuse of discretion it will not be reversed on appeal."

See also *Nizer v. Phelps,* 252 Md. 185, 249 A. 2d 112.

We cannot say that the judge was in error, on the evidence before him, in ruling that Pauley was not qualified to express an expert opinion.

D. The final contention of appellant that the court erred in ruling on evidence is directed to the instruction to the jury to disregard the testimony of the witness Bottalico that lights or flares were placed beside the hole on the night of the accident. The witness said that at about 2:00 A.M. on the way home from the hospital he observed a truck putting out two light pots showing where the hole was. After granting a motion to strike, the court instructed the jury to disregard the answer to the question.

Appellant acknowledges the rule against showing a subsequent precaution or repair as an admission of negligence, but says the evidence was admissible to negate any inference that tire tracks observed the next morning were the tracks of some other vehicle, and to show that tire tracks at the hole were made by appellant, because the lights protected the area against the intrusion of other vehicles.

This argument ignores the interval of four and one half hours between the accident and the placing of the lights. Officer Alexander testified to the tracks he observed at the scene that night. At least two other witnesses besides Bottalico testified that lights were placed that night. We are not persuaded that this ruling was error, but if so, it was harmless.

II

*Error in the Court's Instructions*

Appellant's brief argues error in the instructions with respect to the degree of care required on the part of the governing agency and in not informing the jury of the dismissal of the crossclaims among the defendants. The

brief also argues that the evidence, or lack of evidence, of contributory negligence, did not warrant a finding of contributory negligence.

A. After instructions had been given to the jury, and after an exception relating to damages, appellant's counsel said, "The other would be an instruction that I had submitted to you, I believe it was Number Four, which included two points, the County having a higher degree of care than an ordinary traveler, and also the legal proposition if a hole is there for a length of time, there can be a presumption arising from the existence of the hole".

If the exception presents two separate principles of law, neither one, technically, is properly before us for review. Whatever was requested was not set out in words, but was referred to by a number, and no grounds were stated. The Court of Appeals held in *Jones v. Federal Paper Bd. Co.*, 252 Md. 475, 250 A. 2d 653, that the requirements of Maryland Rule 554 were not met when:

> "* * * the plaintiffs failed to state the grounds of objection at the conclusion of the trial court's charge to the jury and merely made reference to the number of the requests for instructions they thought should be granted." At page 490.

A contention that the County has a higher degree of care than an ordinary traveler seems meaningless, under the circumstances.

However, we have examined the instructions and conclude that as a whole they correctly state the law applicable to the case. *Wilhelm v. State Traffic Comm.*, 230 Md. 91, 185 A. 2d 715, *Aravanis v. Eisenberg, supra*. As the Court said in *Jones v. Federal Paper Bd. Co., supra:*

> "Here again, however, if the issues raised by the refusal by the trial court to grant the instructions mentioned were properly before us, we would not have concluded that there was any error in their refusal."

B. Following its responsive pleading to the plaintiff's amended declaration the Board of County Commissioners filed a crossclaim against its co-defendants, and those defendants filed a crossclaim against the Board of County Commissioners. The docket entries show that the jury was sworn as to the original claim and both crossclaims. After all evidence was closed, each defendant moved to dismiss its crossclaim with prejudice, and each consented to the other's dismissal. Counsel for appellant objected, stating that he deemed it wise as a matter of strategy that they stay in. The motions were granted, and the court ordered the crossclaims dismissed.

When exceptions were being taken after the court instructed the jury, appellant's counsel said, "The jury may wonder why the crossclaims are not considered, and I would also ask that there be an instruction that * * * there has been a cross dismissal by each of the parties in the crossclaims, so that is why they will not be considered." The court declined to elaborate further.

Under the provisions of Maryland Rule 541 b. the judge clearly had the power to grant the motions for voluntary dismissal, adopting as the "terms and conditions" that the dismissal be with prejudice.

Crossclaims among alleged joint tort-feasors have their greatest efficacy in those stages of a trial before it is determined which of multiple defendants will be exposed to a jury verdict. Pendency of a crossclaim can prevent a co-defendant's premature exit from the case by a successful demurrer to the plaintiff's declaration, by a summary judgment against the plaintiff, by a separate settlement with the plaintiff, or by a directed verdict during trial as to the plaintiff's right to recover against him. However, unless a crossclaim seeks some separate affirmative relief, or indemnification, as distinguished from contribution, it virtually loses its *raison d'etre* when the parties to it are equally exposed to a jury determination of the liability or non-liability of each. See Maryland Rule 314. Those defendants who are

held liable to the plaintiff are also liable to each other in contribution, with or without a crossclaim, and those defendants who are held not liable to the plaintiff are not liable at all.[1]

We know of no principle or rule that a plaintiff has any rights arising from crossclaims among defendants. We think that disposition of the crossclaims before submission to the jury can be helpful in simplifying the issues in such cases as this. The questions the jury was required to decide were fully and clearly explained in the court's instructions. No purpose could have been served by telling them what they need not decide.

C. Judge Meloy instructed the jury on the law relating to contributory negligence, and the burden of proof it carries. Appellant does not contend that the principles were incorrectly stated, but that the issue should not have been submitted to the jury at all. We take appellant's argument in her brief as preserving the exception taken to the instructions when counsel said, "Now, I take exception to the instruction on contributory negligence because I feel that the jury does not have evidence to consider the element of contributory negligence."

This contention amounts, in substance, to a request for a directed verdict for the plaintiff on the issue of contributory negligence, *Lindenberg v. Needles*, 203 Md. 8, 15, 97 A. 2d 901, and we must examine the evidence as would be required by such a request. As the Court said in *Lindenberg, supra,* at page 14:

> "The case invokes familiar principles. It is constantly reiterated in the books that contributory negligence cannot be found as a matter of law, unless the evidence permits of but one interpretation which shows some prominent and

---

1. It should be noted that crossclaims are not compulsory, and any affirmative claim which one defendant has against another may be litigated separately. When such a claim is not litigated in the plaintiff's suit, final judgments there on findings of negligence or lack of negligence of defendants are not *res judicata* in a separate suit between them. *Creighton v. Ruark*, 230 Md. 145, 149-150, 186 A. 2d 208.

decisive act in regard to which there is no room for ordinary minds to differ. *Beck v. Baltimore Transit Co.,* 190 Md. 506, 58 A. 2d 909; *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517; *Brown v. Bendix Aviation Corp.,* 187 Md. 613, 51 A. 2d 292.

Conversely, if there is no evidence of acts or conduct from which a reasonable mind could find or infer negligence on the part of a plaintiff, it is error to instruct a jury as to contributory negligence. *Goldman v. Johnson Motor Lines,* 192 Md. 24, 63 A. 2d 622; *Garozynski v. Daniel,* 190 Md. 1, 57 A. 2d 339; *Anne Arundel County Comm'rs v. Carr,* 111 Md. 141, 73 A. 668; *Sieland v. Gallo,* 194 Md. 282, 71 A. 2d 45; and *Klein v. Dougherty,* 200 Md. 22, 87 A. 2d 821.

In the absence of the prominent and decisive act which constitutes contributory negligence as a matter of law, the question as to such negligence is for the jury. The burden of proving contributory negligence is on the defendant. *Klein v. Dougherty,* and *Goldman v. Johnson Motor Lines,* both *supra.*"

See *Rice v. Norris,* 249 Md. 563, 241 A. 2d 411.

This Court said in *Buchanan v. Galliher and Harless,* 11 Md. App. 83, 272 A. 2d 814, at page 87:

"When a trial court is called upon by a motion for a directed verdict to rule upon the legal sufficiency of the evidence to require submission of any issue to a jury, the court must assume the truth of all credible evidence on that issue and of all inferences fairly deducible therefrom, and consider them in the light most favorable to the party against whom the motion is made, and if such evidence and inferences lead to conclusions from which reasonable minds could not differ, then the issue is one of law for the court and not one of fact for the jury."

The fact situation here was not basically unlike that in the case of *Singleton v. Roman,* 195 Md. 241, 72 A. 2d 705, where the Court of Appeals said, at page 249:

> "We think the judge should also have specifically instructed the jury that if they believed defendant ran his car into the abutment because of the glare of the headlights of the oncoming car, then it was his duty to reduce his speed so as to avoid colliding with any object which he could not otherwise have seen in time to avoid it. The law is established that a motorist is not relieved of the duty to exercise due care to observe objects along the side of the road by the mere fact that the glare of the headlights of an oncoming car makes it more difficult to see the side of the road. If he is prevented from seeing such objects by the glare of headlights, he should reduce the speed of his car."

Indeed, the duty of a motorist to maintain an adequate lookout to assure that he always knows what may be in his path follows the motorist wherever he directs his vehicle. The degree of vigilance necessary to constitute ordinary care varies with the circumstances, and certainly would be greater when one drives from pavement to shoulder. An excellent discussion of this duty appears in *Hoerr v. Hanline,* 219 Md. 413, 149 A. 2d 378, where Judge Prescott, for the Court, said at pages 421 and 422:

> "The appellant's last contention is that the appellee was guilty of contributory negligence as a matter of law. It is, of course, the duty of an operator of a motor vehicle upon a public highway at night to observe constantly the highway in front of him in order to discover persons and other vehicles thereon and avoid colliding with them, and to keep his motor vehicle under such control that he may readily operate or stop it so as to avoid such a collision. And, in this

regard, it is his duty to keep an effective look-out, *i. e.,* to see what he could have seen had he exercised due care under the existing circumstances. *Victor Lynn Lines, Inc. v. State,* 199 Md. 468, 477, 87 A. 2d 165. However, negligence is a relative term; in the abstract it is not recognized in law. It derives its legal significance only where it is associated with a given body of factual conditions and circumstances. When those circumstances include the fact that the operator of a motor vehicle at night had his vision interfered with by the approaching lights of another motor vehicle, the courts in different States are not in accord. We recently had the question before us in a case quite similar to the one at bar. *Ford v. Bradford,* 213 Md. 534, 543-545, 132 A. 2d 488. In that case, we analyzed most of the previous Maryland cases on the subject, and pointed out that a motorist, who continues on his course after his vision has been interfered with by approaching lights, should not, ordinarily, be held guilty of contributory negligence as a matter of law. We stated that in determining whether a motorist was contributorily negligent as a matter of law in failing to observe a stationary vehicle obstructing the highway ahead, no hard and fast rule should be laid down. The surrounding circumstances and the facts of each individual case should be considered; the test being what an ordinarily prudent person would have done under similar circumstances. We held there that the question of contributory negligence should have been submitted to the jury; and we can discover, in the facts stated above, no action on the part of the plaintiff herein of such a distinct, prominent and decisive character that would necessitate a ruling that the plaintiff was contributorily negligent as a matter of law. Under the circum-

stances existent at the time of the collision, the question of contributory negligence was properly submitted to the jury."

While it could not be said that the evidence here shows any act of appellant so prominent and decisive as to hold her contributorily negligent as a matter of law, her actions as she herself related them, required submission of that issue to the jury.

## III

### Failure to Grant a New Trial

Appellant asserts that Judge Meloy erred when he denied her motion for a new trial. She advances two reasons why the motion should have been granted:

a. She summoned the investigating police officer and directed that he bring all photographs. One that had been taken was not produced by the officer at the trial. He said that it could not be located. After the trial was over the additional negative was found in the police file, and a print was tendered with the motion, presumably as newly discovered evidence.

b. It was later discovered that a member of the jury was employed by the Maryland-National Capital Park and Planning Commission as a planner. That Commission is a bi-county municipal corporation which exercises certain governmental functions in Prince George's County. She says that when the panel was asked on *voir dire* whether any member was employed by the Board of County Commissioners of Prince George's County, good discretion should have required that juror to make his employment known, but it was not done.

A. That there might have been an additional photograph not produced by the officer was discovered, or disclosed, on the first day of trial at the latest. There is no showing that there was any search for it, or further inquiry concerning it, during the next five days. Under those circumstances the photograph cannot be considered as newly discovered after the trial.

B. The jury list upon which all counsel noted their peremptory challenges showed the employment of one of the jurors to be: "City Planner, MNCPPC". The employment which appellant now complains should have been made known on *voir dire* was in fact known before the jury was empanelled, and before appellant's counsel noted on the record that he was satisfied with the jury. The contention is not only without merit and unsupported by the facts; it is directly contrary to the facts.

It is well established that the action of a trial court on a motion for a new trial is not reviewable on appeal, at least when the trial court fairly exercised its discretion. *Leitch v. Anne Arundel County,* 248 Md. 611, 619, 237 A. 2d 748, *Martin v. Rossignol,* 226 Md. 363, 366-367, 174 A. 2d 149, *Brinand v. Denzik, supra,* at page 292. Denial of the motion was clearly within the discretion of the trial court, and that discretion was fairly exercised.

We find no reversible error, and shall affirm the judgments.

*Judgments affirmed.*
*Appellant to pay costs.*