589 A.2d 1285

HOWARD STREET JEWELERS, INC.

v.

Gilbert WEGAD.

No. 1113, Sept. Term, 1990.

Court of Special Appeals of Maryland.

May 14, 1991.

James A. Rothschild (William C. Hudson and Anderson, Coe & King, on the brief), Baltimore, for appellant.

Shirlie Norris Lake (Jeffrey A. Sharpe and Eccleston and Wolf, on the brief), Baltimore, for appellee.

Argued before BLOOM, ROBERT M. BELL and FISCHER, JJ.

ROBERT M. BELL, Judge.

Howard Street Jewelers, Inc., appellant, sued its accountant, Gilbert Wegad, appellee, a CPA, in the Circuit Court for Baltimore County for professional malpractice, alleging his failure to discover defalcations by one of appellant's employees. Appellee defended on the basis that appellant was contributorily negligent. By special verdict, the jury determined both that appellee was negligent and appellant was contributorily negligent and, so, judgment was entered in favor of appellee. Appellant appeals from that judgment, presenting a single question:

> Did the trial court err in refusing to give a requested instruction that a client's reliance on his accountant is not contributorily negligent in an action against the accountant for malpractice?

We answer the question in the affirmative and, thus, reverse and remand for new trial. The jury's verdict finding appellee guilty of professional malpractice is not challenged on this appeal.

The facts pertinent to our resolution of the issue presented on appeal are either not disputed or conceded.[1] In view of appellee's failure to file a cross-appeal with respect to the jury's verdict as to him, it is conclusively established, for purposes of this appeal, that appellee was negligent "by fail[ing] to exercise reasonable care and skill in his perform-

---

**1.** Appellant filed an appendix to its brief, containing only its alternative contributory negligence jury instruction requests, both numbered 18, a portion of the court's jury instructions, specifically that portion relating to contributory negligence, that portion of appellant's exceptions to the court's instructions which addressed the court's refusal to give its requested contributory negligence instructions, and the verdict sheet as completed by the jury. It did not include any portion of the trial transcript even though appellant's argument depended upon the establishment of at least a limited factual predicate. Each time representations of fact were made, our attention was directed to the trial transcript. Appellee did not file an appendix, nor, for that matter, did he challenge the adequacy of appellant's submittal. Like appellant, appellee directed our attention to the trial transcript whenever he made factual representations.

Appellant was required, as is true in any civil case, to prepare and file a record extract. Maryland Rule 8–501(a). Section (c) of that Rule addresses the contents of the extract and requires that it "contain all parts of the record that are reasonably necessary for the determination of the questions presented by the appeal." Appellant's entitlement to the jury instruction requested with respect to contributory negligence depended upon there being support in the record for its allegation that it relied upon appellee's advice, and followed appellee's instructions, concerning the financial crisis in which appellant found itself. Nevertheless, as we have seen, the appendix attached to appellant's brief contained no part of the trial transcript. An appellate court may dismiss the appeal when the appellant fails to comply with Rule 8–501. See 8–501(*l*).

We raised, *nostra sponte,* at oral argument the issue of the sufficiency of appellant's appendix. Also at oral argument, appellee conceded that there was support in the record for the proposition that appellant did rely upon appellee's advice in connection with the financial hardship. Therefore, in light of appellee's concession, notwithstanding the deficiency in appellant's appendix, we believe we have sufficient information to permit us to resolve the issue presented on appeal. Hence, we will not impose any sanction, especially not the ultimate sanction of dismissal, for that deficiency.

ance of accounting services for [appellant] which negligence was a direct cause of economic damage to [appellant]." Moreover, it is not disputed that appellee had been appellant's accountant since at least 1948, first as an employee of an accounting firm and later as the principal of his own firm. Furthermore, it is undisputed that appellant began to experience financial problems, characterized by cash flow difficulties, in 1983 and that those problems persisted until the fact that its cashier was embezzling from it was fortuitously discovered in 1985.

Throughout this period, appellee was fully aware of appellant's financial problems and the manner in which they manifested themselves. Indeed, the parties agreed that the store's financial difficulties were discussed with appellee at each year end meeting.

Appellant's theory was that, despite appellee's awareness of its financial difficulties, he did not, at any time, suggest how the source of the cash shortages could be discovered. It contended, and presented evidence at trial to show, that it followed such advice and suggestions as appellee gave.

Appellee's response was, and is, that his advice, upon which appellant may have relied, did not cause the harm, rather, the damages were caused by appellant's failure to act on information it had, independent of appellee, which led to the conclusion that an employee was stealing from the company. Thus, he says that the record reveals that, as early as 1983, appellant recognized and, in fact, was told of, the possibility that theft was the source of the cash shortages.[2] Appellant acknowledges that, in 1983, it sought to guard against theft by salesmen.

The parties agree that in 1984, Lore Levi, the wife of appellant's founder, became suspicious of appellant's cashier; her husband, however, did not believe that the employee was stealing. Nevertheless, Mrs. Levi, consistent with

---

**2.** Appellant denies that it was told by appellee at the year end meeting in 1983 that theft was a possible source of the problem. Appellee presented evidence to that effect, however.

appellee's advice, kept her eyes open, continuing to watch the cashier and to go over her paperwork. Eventually, a month's worth of work papers prepared by the cashier was given to appellee, who reviewed them and found nothing.[3]

Prior to the jury being instructed, appellant submitted, *inter alia*, alternative contributory negligence instructions, both numbered 18, which it asked the court to give. The first paragraph of each instruction was identical, containing a rather standard contributory negligence instruction:

> A person is contributorily negligent when he fails to exercise ordinary and reasonable care for his own protection by doing something that a person of ordinary prudence would not do or failing to do something that a person of ordinary prudence would do, under the same circumstances. To be held contributorily negligent, a person must actually have been aware or should have appreciated the risks involved and then failed to exercise reasonable and ordinary care for his protection. The burden of proving contributory negligence is on the defendant.

Though both proposed instructions focus on a client's reliance on its accountant's advice, the second paragraphs were different. Each contained an alternative formulation of the contributory negligence standard when the client relies upon its accountant. The alternative formulations of the standard are as follows:

> (1) If you find that the Levi's relied upon the skills of Gilbert Wegad, a certified public accountant and that Mr. Wegad made material adjustment to their financial records without informing them, and he did not advise

---

**3.** As indicated, the discovery of the embezzlement scheme was fortuitous. While the cashier was off, a customer who had laid an item away on the previous day came in to make another payment. The sales slip could not be found. It was found immediately, however, when the cashier came in on the next day. Thereafter, when the cashier left for the day, Alvin Levi, the founder's son, conducted an investigation, focusing on the layaway sale, and discovered the manner in which the embezzlement was being carried on.

them of any steps to take to detect the theft problem they cannot be found to have been contributorily negligent. (2) The client can rely on the accountant's knowledge and skill. It is not contributorily negligent for a client to follow an accountant's instructions, or rely on his advice, or to fail to consult with another accountant or to discover the source of a financial problem itself where the client has no reason to suspect his accountant's advice and instructions are wrong.

The court rejected both formulations and, instead, gave an instruction as follows:

Now, the plaintiff cannot recover if his or her or its, in this case we are talking about a corporation, own negligence is the cause of the plaintiff's damage or injury. Since the plaintiff in this case is a corporation, the issue of contributory negligence as it is called is to be considered in relation to the acts or omissions on the part of the corporation's principals or agents. So, in this case the issue relates to the consideration of acts or omissions on the part of either Julius Levi, Lore Levi or Alvin Levi. And negligence, as I instructed you a moment ago, is doing something that a person using ordinary care would not do or not doing something that a person using ordinary care would do. Ordinary care being that caution, or attention or skill that a reasonable person would use under similar circumstances.

And so with respect to the issue of contributory negligence the defendant has the burden of proving by a preponderance of the evidence, which I will explain later, that the plaintiff's negligence was a cause of the plaintiff's damage or loss.

So that means that if you find from the evidence that one or more of the plaintiff's principals was guilty of negligence which was a direct cause of the plaintiff's loss or damage, then your verdict must be for the defendant. And that would be regardless of whether you find that the defendant was also negligent and regardless of whose negligence was greater.

After the jury had been instructed, appellant's counsel stated its exceptions to the court's instructions. Pertinent to the case *sub judice,* counsel stated:

> Your Honor, I except to the instructions that I requested and did not get.... Plaintiff's 18 was submitted today on contributory negligence, which has the standards and speaks to the issue of what contributory negligence should be for a professional relationship with clients, the reliance a plaintiff may have on a defendant who is a professional.

If it is a correct statement of the law and supported by the evidence, each party to litigation is entitled to have his, her, or its theory of the case submitted to the jury. *See* Maryland Rule 2–520(c), which provides:

> (c) *How given.*—The court may instruct the jury, orally or in writing or both, by granting requested instructions, by giving instructions on its own, or by combining any of these methods. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

*See also The Sergeant Company v. Pickett,* 285 Md. 186, 194, 401 A.2d 651 (1979), quoting *Levine v. Rendler,* 272 Md. 1, 13, 320 A.2d 258 (1974); *Myers v. Alessi,* 80 Md.App. 124, 131, 560 A.2d 59, *cert. denied,* 317 Md. 640, 566 A.2d 101 (1989); *Zeller v. Greater Baltimore Medical Center,* 67 Md.App. 75, 80, 506 A.2d 646 (1986). Moreover, when an appellate court reviews the propriety of a requested instruction, in addition to determining whether the requested instruction contains a correct statement of the law, based on evidence presented, the court also determines whether it was fairly covered by instructions actually given. *Myers,* 80 Md.App. at 132, 560 A.2d 59; *Zeller,* 67 Md.App. at 83, 86–87, 506 A.2d 646.

■ Before proceeding to the merits of the question presented by appellant—the propriety of the court's refusal to give appellant's requested instructions, in either of the alternative forms—, we must address appellee's argument that the issue is not properly before us. Appellee main-

tains, that although appellant excepted to the court's instructions, its exception was incomplete. Specifically, he says,

> "Indeed, there is no objection stated. Appellant's counsel merely identified the instruction he desired, he did not provide any grounds for his objection, much less a clear or particularized statement of the grounds for his exception."

For the reasons that follow, we reject that argument. Maryland Rule 2–520(e) provides:

> (e) *Objection.*—No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury.

The Rule quite clearly requires, not only a prompt objection to the court's instructions, but a statement of the basis for that objection as well. Thus, because "the rule demands clarity and particularization both in the assignment of error and the reasons therefor", its "... obvious purpose ... is to give the trial judge an opportunity to correct or add to his instructions...." (Citations omitted). *Aetna Casualty and Surety Company v. Hartford Accident & Indemnity Company*, 74 Md.App. 539, 548, 539 A.2d 239 (1988).

Appellee relies upon *Belt's Wharf Warehouses, Inc. v. International Products Corp.*, 213 Md. 585, 132 A.2d 588 (1957) and *Murphy v. Board of County Commissioners*, 13 Md.App. 497, 284 A.2d 261 (1971). In *Belt's Wharf*, the Court of Appeals, applying Rule 544(d), the predecessor to Rule 2–520(e), held that an objection that merely gives the number of the requested instruction and nothing more, is insufficient to preserve an objection to the court's instructions for appellate review. 213 Md. at 592, 132 A.2d 588. This is so because the mere statement of the number of the requested instruction does not sufficiently specify the grounds for the objection. We reached a similar result in

*Murphy v. Board of County Commissioners,* where counsel, in addition to giving the court the number of the instruction also provided an explanation as follows, "the County having a higher degree of care than an ordinary traveler, and also the legal proposition if a hole is there for a length of time, there can be a presumption arising from the existence of the hole." 13 Md.App. at 506, 284 A.2d 261. We determined that that explanation was not a sufficient statement of the grounds for the exception as to preserve the issue for appellate review. *Id.*

On the other hand, where the reference to the request number and the explanation is coupled with circumstances which indicate that the court is aware of the rationale for the requested instruction, a different result will be reached. *See, e.g., Sergeant Company, et al. v. Pickett,* 283 Md. 284, 288–89, 388 A.2d 543 (1978). In that case, the record reflected that, after it and counsel had discussed a requested instruction, both by number and by content, the trial court indicated that it was not applicable to the case. Finding the circumstances to support preservation of the objection, the Court of Appeals stated:

> [A]ppellants did not confine their objection to a simple reference to the prayer by number, which alone sets this case apart from the *Belt's Wharf* line of authority. Counsel mentioned "avoidable consequences," which, when coupled with a mere cursory reading of the proffered instruction, was sufficient to identify for the trial judge the nature and ground of the objection. That the court fully comprehended the legal contention being offered by appellants and also regarded further argument unnecessary is manifest....

*Id.,* 283 Md. at 289, 388 A.2d 543. In fact, "where the record makes clear that all parties and the court understood the reason for the objection," no specific ground for an exception to a jury instruction need be given. *Exxon Corp. v. Kelly,* 281 Md. 689, 694 n. 6, 381 A.2d 1146 (1978).

In the case *sub judice,* after having taken exceptions, referring to his requested instructions both by number and, cursorily, by content, the court acknowledged:

> As to your other exceptions, I think we discussed all of those in chambers. And with respect to most of them my feeling was that they are factual matters that you are entitled to argue to the jury but they were not appropriate for instructions.

We think this sufficiently sets this case apart from those in which the mere reference to the number of the requested instructions was found insufficient to preserve the matter for appellate review.

As is clear from appellant's requested instructions and the exceptions it took to the instructions actually given, appellant did not challenge the general contributory negligence instruction. It challenged only the court's refusal to tailor that general instruction so as to take account of a client's reliance on advice given it by a professional, in this case, an accountant. For the proposition that it is entitled to such a refined contributory negligence instruction, appellant relies upon *Santoni v. Schaerf,* 48 Md.App. 498, 428 A.2d 94 (1981), *rev'd on other grounds,* 292 Md. 582, 441 A.2d 323 (1982).

In *Santoni,* we were concerned, as we are here, with the question of contributory negligence in the context of a professional malpractice action, in that case, of a doctor's patient, while here, of the client of an accountant. We recognized that contributory negligence is a defense in a medical malpractice case where it is an active and efficient contributing cause of the patient's injury. 48 Md.App. at 505, 428 A.2d 94. We noted, however, that "[a]n important element of contributory negligence is the foreseeability of harm. To be held contributorily negligent, a person must actually have been aware of or should have appreciated the risks involved and then failed to exercise reasonable and ordinary care for his own safety." 48 Md.App. at 506, 428 A.2d 94. Moreover, addressing the need of an injured party to anticipate negligent acts or omissions on the part of

others, under circumstances which do not indicate that he or she knew or should have known that such an assumption was not a safe one to make, 48 Md.App. at 507, 428 A.2d 94, *quoting Sanders v. Williams,* 209 Md. 149, 152, 120 A.2d 397 (1956), we said:

> ... [I]n medical malpractice cases, courts have noted the disparity between the knowledge and skill of a doctor and that of a patient.
>
> The patient is not in a position to diagnose his own ailment. Without being told, he does not know the risks of medication. He is not in a position to judge whether the prescribed course of treatment is in his best interest. As a consequence, it is not contributory negligence for a patient to follow a doctor's instructions or rely on his advice ...; to fail to consult another doctor when the patient has no reason to believe that the doctor's negligence has caused his injury ...; or to fail to diagnose his own illness....
>
> The patient has a right to rely on the doctor's knowledge and skill. (Citations omitted)

48 Md.App. at 507–08, 428 A.2d 94.

In *Santoni,* the estate of a patient who died from hepatitis, contracted as a result of taking the drug Isoniazid, sued the physician who prescribed the drug. The doctor raised contributory negligence as a defense. We held, notwithstanding that the patient was aware that something was wrong—he experienced fatigue, decreased appetite, and gastric discomfort—that there was no evidence that the patient knew the risk of taking the drug or had any other knowledge concerning the cause of his illness. We said that he could not be held to be contributorily negligent for having reasonably relied upon his doctor's advice.

Formulation No. 2 of requested instruction 18 is consistent with the principles enunciated in *Santoni,* adapted, however, to the case of a client/accountant relationship. By that request, appellant sought to have the jury instructed that it could justifiably rely upon its accountant's knowledge and skill and, further, that it is not contributory

negligence to do so, at least where it had no reason to suspect that the advice and instructions given were wrong. Such an instruction is supported by the evidence. As conceded at oral argument, there was evidence that appellant relied upon the advice and instructions of appellee in connection with its attempt to detect the source of appellant's financial problems, and, in particular, its cash shortfall. Moreover, such an instruction, because it recognizes the disparity in knowledge possessed by an accountant and his client, states the obvious: a client hires a professional for his or her professional knowledge and skill, which, not unexpectedly, he or she may rely upon. Such an instruction, furthermore, ensures that the jury will not hold one of the parties responsible for failing to act, or acting, consistent with the knowledge and duty more appropriately placed on another. We believe the trial court erred in refusing the requested instruction.

Appellee counters by arguing that, since unlike the patient in *Santoni,* who did not know the risk of taking the prescribed drug, appellant was aware that it might be the victim of theft, it was "appellant itself [which] had knowledge sufficient to lead it to the conclusion that its employee was stealing from the company [and] that it failed to act, and thus, it caused the damage itself." Appellee maintains, in short, that the acts of contributory negligence to which he refers and about which the jury was instructed were independent of any acts or omissions consistent with reliance by appellant on appellee.[4] The difficulty with appel-

---

**4.** Appellee, as a threshold matter, maintains that the *Santoni* rule does not apply in the case of an accountant malpractice action. To his mind, the case applies only to medical malpractice cases, since "there is no language in *Santoni* which would support [appellant's] assertion that the requested instruction is appropriate in an accountant malpractice case." Furthermore, appellee cites *Stratton v. Sacks,* 99 B.R. 686, 692–93, 695 (D.Md.1989), *aff'd,* 900 F.2d 255 (1990), for the proposition that the traditional contributory negligence rule is applicable to accountant malpractice cases in Maryland. We reject both arguments. We also point out that the district court, in *Stratton,* did not reject a modified contributory negligence standard, based on *Lincoln Grain, Inc. v. Coopers & Lybrand,* 216 Neb. 433, 345 N.W.2d

lee's position is that the facts surrounding the contributory negligence issue are such that those upon which appellee relies to prove appellant's failure properly to supervise its employee could also support appellant's position, that it was relying on appellee's skill and advice in determining how it supervised its employees. Indeed, at oral argument, it was conceded that, when Mr. Levi's wife began to suspect the cashier of stealing, that fact was brought to appellee's attention and, at least Mrs. Levi followed through on the advice he gave, *i.e.*, to keep an eye on her. Furthermore, although appellee asserts that neither his argument nor the evidence he presented hinged upon appellant's reliance on appellee, appellant did present evidence to that effect. That reliance was not a part of appellee's case does not mean that it was not an issue for the jury. Indeed, it is precisely because the jury may have been caused, by the absence of an instruction on the point, to disregard appellant's reliance except as a basis for finding contributory negligence, that a reliance instruction was rendered appropriate. In other words, it is not solely what appellant relies upon that controls; the extent to which the jury might be misled if a particular instruction is not given is also important.

Also, we do not agree that the instructions actually given adequately covered the reliance issue. The jury was instructed that appellant could only be held contributorily negligent if it "did something that a person using ordinary care would not do." Such an instruction is vague, at best, providing the jury with no assistance in determining what that "something" is. On the other hand, given the fact that the jury found that appellee negligently handled appellant's case, it is conceivable that, without additional clarification and refinement, the jury might have determined that appel-

---

300, 307 (1984), relying on *National Surety Corp. v. Lybrand,* 256 App.Div. 226, 9 N.Y.S.2d 554, 563 (1939), in accountant malpractice cases; rather, it simply noted that the Maryland courts have yet to consider the issue and that, in any event, in that case, contributory negligence would have been found even under the modified standard. 99 B.R. at 694.

lant was contributorily negligent for having relied upon appellee.[5]

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.

---

**5.** Appellant's request for a *Santoni* type instruction is to be contrasted with cases in which the definition of contributory negligence in an accountant malpractice context, is much more restrictive. In *National Surety Corp. v. Lybrand,* 256 App.Div. 226, 9 N.Y.S.2d 554 (1939), the Appellate Division of the Supreme Court of New York made clear that "accountants are [not] immune from the consequences of their negligence because those who employ them had conducted their own business negligently." 9 N.Y.S.2d at 563. Indeed, it held: "Negligence of the employer is a defense only when it has contributed to the accountant's failure to perform his contract and to report the truth." *Id. See also Hall & Company, Inc. v. Steiner & Mondore,* 147 A.D.2d 225, 543 N.Y.S.2d 190, 191–92 (1989); *Jewelcor Jewelers & Distributors, Inc. v. Corr,* 373 Pa.Super. 536, 542 A.2d 72, 80 (1988); *Greenstein, Logan & Company v. Burgess Marketing, Inc.,* 744 S.W.2d 170, 190 (Tx.Ct. of App.1987); *Lincoln Grain, Inc. v. Coopers & Lybrand,* 216 Neb. 433, 345 N.W.2d 300, 307–08 (1984); *Shapiro v. Glekel,* 380 F.Supp. 1053, 1058 (S.D.N.Y.1974); *Cereal By–Products Company v. Hall,* 8 Ill.App.2d 331, 132 N.E.2d 27, 29–30 (1956), *aff'd,* 15 Ill.2d 313, 155 N.E.2d 14 (1958). Appellant does not seek adoption of the *Lybrand* standard; it simply points out that a more restrictive approach to contributory negligence in the accountant malpractice context has been adopted in other jurisdictions.