685 A.2d 782

**Sheldon LERMAN**

v.

**Kerry HEEMANN.**

**No. 2012, Sept.Term, 1995.**

Court of Special Appeals of Maryland.

Nov. 29, 1996.

J. Mark Coulson (Mark D. Gately and Miles & Stockbridge, on the brief), Baltimore, for appellant.

Catherine W. Steiner (William W. Whiteford and Whiteford, Taylor & Preston, on the brief), Baltimore, for appellee.

Argued before MOYLAN, FISCHER and SALMON, JJ.

SALMON, Judge.

In 1994, a wrongful-death claim was filed with the Director of the Health Claims Arbitration Office (HCAO) against, *inter alia*, appellant, Sheldon H. Lerman, M.D., and appellee, Kerry R. Heemann, M.D.[1] No cross-claims were filed with the HCAO by either Dr. Lerman or Dr. Heemann. A health claims arbitration panel determined that both doctors were negligent and an award against them was entered. The doctors rejected the award and, pursuant to section 3–2A–06 of the Courts and Judicial Proceedings Article of the Maryland Code (1974, 1995 Repl.Vol.) ("the Courts Article"), suit was filed against Drs. Lerman and Heemann in the Circuit Court for Baltimore County. Again, no cross-claims were filed in the circuit court by the physicians.

In September 1994, the case was tried before a jury (Kahl, J., presiding). A verdict was returned against Drs. Lerman and Heemann in the amount of $3,354,808.55. Subsequently, the insurance carrier for each physician paid one-half the interest due on the judgment. The judgment was satisfied when Dr. Heemann's insurer paid the plaintiffs $2,354,808.55 and Dr. Lerman's insurer paid the remaining $1,000,000 that was due. Because Dr. Heemann paid more than his pro-rata share of the judgment, he filed, pursuant to Maryland Rule 2–

---

1. Suit was also filed against Dr. Lerman's Professional Association (Sheldon H. Lerman, M.D., P.A.), Osler Drive Emergency Physicians Associates, P.A. (ODEPA)Dr. Heemann's employer—and St. Joseph's Hospital, Inc. A Health Claims Arbitration panel returned an award in favor of the plaintiffs and against all defendants. In the circuit court, the jury returned a verdict against all defendants except St. Joseph Hospital, Inc. Sheldon H. Lerman, M.D., P.A., did not file an appeal in this case and ODEPA filed no brief.

614, a post trial motion requesting that a judgment be entered in his favor against Dr. Lerman for $677,404.28.[2]

Dr. Lerman opposed the motion and argued: 1) The court had no authority to enter a judgment for contribution because Dr. Heemann had never filed a cross-claim against him, and alternatively, 2) the court had no jurisdiction to entertain Dr. Heemann's claim for contribution because Dr. Heemann had failed to submit his contribution claim to the HCAO for arbitration. Judge Kahl held a hearing on this matter and, on October 30, 1995, filed a written memorandum opinion and order in which he rejected Dr. Lerman's arguments and granted judgment in favor of Dr. Heemann in the full amount requested. Dr. Lerman noted this timely appeal and raises the same issues as he raised below.

## I. *ISSUE I*

If in a single action a judgment is entered against more than one defendant, and if one defendant pays more than his pro-rata share of that judgment, may a court enter a judgment for contribution against the defendant who has failed to pay his pro-rata share when no cross-claims have been filed?

We have found no prior reported case in Maryland where it was necessary to answer this question. We have, however, twice addressed the question in *dicta* and have answered it in the affirmative. *See Baltimore County v. Stitzel,* 26 Md.App. 175, 187, 337 A.2d 721 (1975), and *Murphy v. Board of County Comm'rs,* 13 Md.App. 497, 507–08, 284 A.2d 261 (1971).

The Uniform Contribution Among Joint Tort–Feasors Act (the Uniform Act) is codified in article 50, sections 16–24 of the Maryland Annotated Code of 1957 (1994 Repl.Vol.). Sections 16 and 17 of the Uniform Act read, in pertinent parts:

§ 16. **Definitions.**

For purposes of this subtitle:

---

**2.** Fifty percent of $3,354,808.55 equals $1,677,404.28; $2,354,808.55 minus $1,677,404.28 equals $677,404.27.

(a) "Joint tort-feasors" means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

(b) "Injured person" means any person having a claim in tort for injury to person or property.

§ 17. **Right of contribution.**

(a) Right exists.—The right of contribution exists among joint tort-feasors.

(b) Discharge of liability or payment of share.—A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his *pro rata* share thereof. . . .

Maryland Rule 2–614 provides:

**Judgment of Contribution or Recovery Over**

If in a single action a judgment is entered jointly against more than one defendant, the court upon motion may enter an appropriate judgment for one of the defendants against another defendant if (a) the moving defendant has discharged the judgment by payment or has paid more than a *pro rata* share of the judgment and (b) the moving defendant has a right to contribution or to recovery over from the other defendant.

 Dr. Lerman stresses that a court can only grant a motion for contribution under Maryland Rule 2–614(b) if the movant has a right of contribution. He posits that Dr. Heemann did not acquire such a right because he failed to file a cross-claim for contribution. We reject this view and hold that no cross-claim is necessary. Dr. Heemann's right to contribution is derived from section 17(a) of the Uniform Act. Maryland Rule 2–614 provides the mechanism under which the rights granted by the Uniform Act are enforced.[3] Dr.

---

3. Persons other than joint tortfeasors may also enforce their right of contribution by utilizing Maryland Rule 2–614. In *Hartford v. Scarlett*

Heemann proved both prerequisites for the application of Rule 2–614. First, the jury verdict established that he and Dr. Lerman shared a common liability to the plaintiffs in the underlying tort action.[4] Therefore, the two were "joint tortfeasors" within the meaning of the Uniform Act. Second, Dr. Heemann proved that he paid more than his pro-rata share of the common obligation.

---

*Harbor,* 109 Md.App. 217, 280–81, 674 A.2d 106 (1996), *cert. granted,* 343 Md. 334, 681 A.2d 70 (1996), Judge Hollander, for the Court, said:

In order for a party to have a right of contribution, two prerequisites must be satisfied. First, the parties must share a "common liability" or burden. *Ennis v. Donovan,* 222 Md. 536, 539–40, 161 A.2d 698 (1960), *overruled on other grounds, Lusby v. Lusby,* 283 Md. 334, 390 A.2d 77 (1978); *Baltimore Transit Co. v. State, to Use of Schriefer,* 183 Md. 674, 679, 39 A.2d 858 (1944). Second, the party seeking contribution must have paid, under legal compulsion, more than his fair share of the common obligation. *Associated Transport v. Bonoumo,* 191 Md. 442, 447, 62 A.2d 281 (1948).

Parties share a common liability if they are either co-obligors or joint tortfeasors. *See Jackson v. Cupples, supra,* 239 Md. at 639–40, 212 A.2d 273 (contribution available among joint obligors); Md.Ann. Code, art. 50, § 16 *et seq.* (1994) (contribution available among joint tortfeasors). Parties are co-obligors if they are jointly liable or jointly and severally liable on an obligation. *See Lyon v. Campbell, supra,* 324 Md. 178, 596 A.2d 1012 (tax liability). They are not co-obligors, however, if they are only severally liable on the obligation. *See* 18 C.J.S. *Contribution* § 6 at 8 (1990). The Uniform Contribution Among Tortfeasors Act, Md.Ann.Code, art. 50, § 16(a) (1994), provides: "Joint tort-feasors means two or more persons jointly *or* severally liable *in tort* for the same injury to person or property, whether or not judgment has been recovered against all or some of them." (Emphasis supplied). In sum, parties share a common liability if they are either (1) jointly liable on the same non-tort obligation (such as a contract, promissory note, or tax), or (2) jointly or severally liable, or both, in tort, for the same harm.

4. In the tort suit in which Dr. Heemann and Dr. Lerman were defendants, the jury answered four questions that are relevant, viz: 1) "Did Dr. Kerry Heemann breach the standard of care in his treatment of [the deceased]?" Answer, "Yes"; 2) "Was the breach of the standard of care by Dr. Heemann an actual and proximate cause of injury to and death of [the deceased]?" Answer, "Yes"; 3) "Did Dr. Sheldon Lerman breach the standard of care in his treatment of [the deceased]?" Answer, "Yes"; and 4) "Was the breach of the standard of care by Dr. Lerman an actual and proximate cause of the injury to and death of [the deceased]?" Answer, "Yes."

Paul V. Niemeyer & Linda M. Scheutt, in *Maryland Rules Commentary* 475 (2d ed. 1992), accurately explain the history,[5] purpose, and effect of Maryland Rule 2–614:

This rule continues the substances of former Rule 605d with stylistic changes only. It is a rule of convenience that permits one defendant who has paid more than a pro-rata share of a judgment to obtain judgment against another defendant who was held jointly liable. For example, if two defendants, A and B, are joint tortfeasors responsible for the plaintiff's damages, and defendant A pays more than half of the judgment, defendant A may obtain a judgment against defendant B for defendant B's pro-rata share of the judgment paid by defendant A. *Although initiation of a separate action by defendant A against defendant B is an alternative method of proceeding, defendant A may avoid a separate lawsuit by filing a motion for judgment in the original action.*

*Contents of motion.*

A motion for judgment filed under this rule is governed by Rule 2–311. It is granted on the findings of the court or the jury with respect to the joint liability of the parties. The only new fact to be shown is that defendant A paid more than a pro-rata share of the judgment. Complete satisfaction of the judgment is not required. The defendant may make this showing by affidavit, as required by Rule 2–311(d). The defendant must also show, as a matter of law, the right to contribution or recovery over against another. For example, the Uniform Contribution Among Tort–Feasors Act, Article 50, § 17 of the Maryland Code, gives this right to one joint tortfeasor against another.

(Emphasis added.)

Dr. Lerman argues:

[H]ad [a]ppellee filed a cross-claim against [a]ppellant, the jury's verdict in the underlying action against both doctors could form the basis for a motion pursuant to Rule 2–614.

---

**5.** In 1981, the Court of Appeals adopted Maryland Rule 2–614. Rules Committee notes show it was passed without comment.

Where, as here, however, [a]ppellee had only a potential, unasserted and unperfected right of recovery against [a]ppellant because [a]ppellee failed to file a cross-claim, Rule 2–614, by its very terms, is not available.

Dr. Lerman further maintains:

[T]he trial court's decision blur[s] the distinction between potential liability and actual liability. There are many instances where an alleged tortfeasor is potentially liable. In some cases, evidence of that potential liability may be so strong as to make judgment against the party a virtual certainty. Notwithstanding this, no court would enter judgment against a tortfeasor in the absence of a claim being brought against the tortfeasor.

The short answer to Dr. Lerman's arguments is that Dr. Heemann did make a claim against Dr. Lerman. The claim was made by a motion, and his right to make the claim in this manner is fully authorized by the provisions of Maryland Rule 2–614. His claim, therefore, was not "potential, unasserted and unperfected."

The appellant asserts that reading Rule 2–614 to allow a judgment for contribution without the necessity of filing a cross-claim would "eviscerate Rule 2–331(d) governing cross-claims." [6] This is untrue. Although there are situations, such as those here presented, in which a cross-claim proves to be unnecessary, there are many situations where a defense counsel would be extremely imprudent if he or she failed to file a cross-claim. This was cogently explained by Judge Powers,

---

**6.** Maryland Rule 2–331(d) reads:

**Time for Filing.**—If a party files a counterclaim or cross-claim more than 30 days after the time for filing that party's answer, any other party may object to the late filing by a motion to strike filed within 15 days of service of the counterclaim or cross-claim. When a motion to strike is filed, the time for responding to the counterclaim or cross-claim is extended without special order to 15 days after entry of the court's order on the motion. The court shall grant the motion to strike unless there is a showing that the delay does not prejudice other parties to the action.

for this Court, in *Murphy, supra*, 13 Md.App. at 507–08, 284 A.2d 261:

> Crossclaims among alleged joint tort-feasors have their greatest efficacy in those stages of a trial before it is determined which of multiple defendants will be exposed to a jury verdict. Pendency of a crossclaim can prevent a co-defendant's premature exit from the case by a successful demurrer to the plaintiff's declaration, by a summary judgment against the plaintiff, by a separate settlement with the plaintiff, or by a directed verdict during trial as to the plaintiff's right to recover against him. However, unless a crossclaim seeks some separate affirmative relief, or indemnification, as distinguished from contribution, it virtually loses its *raison d'etre* when the parties to it are equally exposed to a jury determination of the liability or non-liability of each. See Maryland Rule 314.[7] Those defendants who are held liable to the plaintiff are also liable to each other in contribution, with or without a crossclaim, and those defendants who are held not liable to the plaintiff are not liable at all.

(Footnote in original omitted.)

## II. *ISSUE 2*

Before making a claim for contribution under Maryland Rule 2–614, was Dr. Heemann required to submit his claim against Dr. Lerman to the HCAO for arbitration?

■ Section 3–2A–02 of the Courts Article governs what claims must be filed before the HCAO prior to maintaining a circuit court action. It reads:

**Exclusiveness of Procedures**

> (a) Claims and actions to which subtitle applicable.—(1) All claims, suits and actions, including *cross-claims*, third-party claims, and actions under Subtitle 9 of this title,[8] by

---

7. Former Rule 314(d)(2) was substantively similar to the current Rule 2–331(d).

8. Subtitle 9 deals with actions for wrongful death.

a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought are subject to and shall be governed by the provisions of this subtitle.

(2) An action or suit of that type may not be brought or pursued in any court of this State except in accordance with this subtitle.

(3) Except for the procedures stated in § 3–2A–06(f) of this subtitle, an action within the concurrent jurisdiction of the District Court is not subject to the provisions of this subtitle.

(b) Statement of amount of damages.—A claim filed under this subtitle and an initial pleading filed in any subsequent action may not contain a statement of the amount of damages sought other than that they are more than a required jurisdictional amount.

(c) Establishing liability of health care provider.—In any action for damages filed under this subtitle, the health care provider is not liable for the payment of damages unless it is established that the care given by the health care provider is not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

(d) Maryland Rules of Procedure applicable.—Except as otherwise provided, the Maryland Rules of Procedure shall apply to all practice and procedure issues arising under this subtitle.

(Emphasis added.)

Appellant posits that Dr. Heemann asserted a "claim" against him when he filed his Rule 2–614 motion; that the claim, as between Dr. Heemann and Dr. Lerman, has never been arbitrated in the HCAO; that the amount now claimed by Dr. Heemann was more than the concurrent $20,000 jurisdiction of the District Court and, therefore, the dictates of

section 3–2A–02 prevent Dr. Heemann from asserting his claim for contribution in the circuit court. Appellant maintains that Dr. Heemann's

> only choice under the circumstances is to file a new claim for contribution at the [HCAO] in order to comply with the explicit requirements of the [Health Claims Arbitration Act]. In its posture before the trial court, [a]ppellee's "claim" was merely an attempt to circumvent the statutory framework that the General Assembly put in place for the timely assertion of cross-claims and the resolution of claims for medical injury such as the present. Accordingly, the trial court should have denied [a]ppellee's Motion.

■ The term "claim" as used in section 3–2A–02(a) of the Courts Article is "to be broadly interpreted to mean 'aggregate of operative facts giving ground or occasion for judicial action, as distinguished from a cause of action.'" *Adler v. Hyman,* 334 Md. 568, 573, 640 A.2d 1100 (1994) (quoting *Group Health Ass'n v. Blumenthal,* 295 Md. 104, 112, 453 A.2d 1198 (1983)). Under this definition, Dr. Heemann's claim *is* indeed subject to the provisions of the Health Claims Malpractice Act ("the Act"), and Dr. Lerman can be liable for contribution only if Dr. Heemann has proven that he and Dr. Lerman are joint tortfeasors, i.e., presents proof that the negligence of both caused injury to the original plaintiff. *Adler, supra,* 334 Md. at 574, 640 A.2d 1100. As appellant points out, the issue of his medical malpractice must first be resolved in arbitration under the Act. *Id.* This avails appellant nothing, however, because here the issue of Dr. Lerman's malpractice *was* first resolved in arbitration.

■ The General Assembly did not intend to require that the issue of a health case provider's negligence be twice submitted to the HCAO for arbitration. The goal of the Act was to lower the cost of litigation involving allegations of medical malpractice. As stated in *Group Health Association v. Blumenthal, supra,* 295 Md. at 113–114, 453 A.2d 1198 (1983):

The legislative intent may be gleaned from the *Medical Malpractice Insurance Study Committee Report to the President of the Senate and the Speaker of the House.* This report delineates the primary object of the Committee's proposal (*id.* at 3, emphasis added):

> "The basic proposal of the Committee is the requirement that *all* health care malpractice claims over $5,000 shall be submitted to arbitration prior to the filing of suit."

The goal of the Committee's proposals was to establish a "mechanism to screen malpractice claims to the filing of suit." *Report* at 3. In the Committee's view, this would reduce the cost of defense by ferreting out unmeritorious claims which, in turn, would lower the cost of malpractice insurance and, potentially, overall health care costs. The Committee's proposed § 3–2A–02(a) was enacted verbatim in ch. 235 of the Acts of 1976. . . .

(Footnote omitted.)

Because the physicians' joint liability for the $3,354,808.55 judgment has already been established by a lawsuit that was unarguably filed after full compliance with the Act, there literally would be no malpractice claim for the HCAO to "screen" and no possibility that an "unmeritorious" claim for contribution would be ferreted out if we required Dr. Heemann to file a claim for contribution in the HCAO. Forcing Dr. Heemann to file such a claim in the HCAO after both a Health Claims Arbitration panel and a jury have already determined that Dr. Lerman and Dr. Heemann are joint tortfeasors would waste time and money and would defeat the purpose of the Act.

For the aforegoing reasons, we hold that no cross-claim for contribution was required to be filed under the Act, and therefore, the trial judge did not err in granting Dr. Heemann's judgment in accordance with his Rule 2–614 motion.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**